PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE ____SOUTHERN____ DISTRICT OF TEXAS
## ____HOUSTON____ DIVISION

United States Courts
Southern District of Texas
F I L E D

JAN 1 7 2020

David J. Bradley, Clerk of Court

STEVEN KURT BAUGHMAN  TDCJ ID No. 02180609
Plaintiff's Name and ID Number

Powledge Unit, TDCJ-ID
Place of Confinement

CASE NO._____
(Clerk will assign the number)

v.

BRYAN COLLIER, EXECUTIVE DIRECTOR OF TDCJ
P.O.BOX 99
Huntsville, TX 77342-0099
Defendant's Name and Address
LORIE DAVIS, DIRECTOR OF TDCJ-ID
P.O. BOX 99
Huntsville, TX 77342-0099
Defendant's Name and Address
DALE WAINWRIGHT, CHAIRMAN , Texas Board of Criminal Justice (TBCJ)
P.O. Box 13084
Austin, TX 78711-3084
Defendant's Name and Address
( DO NOT USE "ET AL.")

## INSTRUCTIONS - READ CAREFULLY
## *JURY TRIAL DEMANDED*

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.   To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.   Your complaint must be legibly  handwritten, in ink, or typewritten.  You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACKSIDE OF ANY PAGE.**  ATTACH AN ADDITIONAL BLANK  PAGE AND  WRITE ON IT.

3.   You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.   When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) , the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

Rev. 05/15

Lanette Linthicum, Medical Director TDCJ-ID
Two Financial Plaza, Ste 625
Huntsville, TX 77340-3558

Owen J. Murray, D.O., President of Correctional Managed Healthcare
University of Texas Medical Medical Branch ("UTMB")
P.O. Box 48
301 University Blvd.
Galveston, TX 77555

Manuel Hirsch, D.D.S., Director of Dental Services of TDCJ-ID
Two Financial Plaza, Ste. 625
Huntsville, TX 77340-3558

Linda Hidalgo, County Commissioner of Harris County
1001 Preston, Room 911
Houston, TX 77002

Mary E. Baker
Senior Assistant County Attorney of Harris County
1019 Congress, 15th Floor
Houston, TX 77002

"John Doe," D.D.S., Unit Dentist on 03/19/2018
Byrd Unit of TDCJ-ID
21 FM 247
Huntsville, TX 77320

Cynthia D. Tilley, Warden of TDCJ-ID
Wayne Scott Unit of TDCJ-ID
6999 Retrieve
Angelton, TX 77515

Jimmy Bowman, Warden of TDCJ-ID
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Vernon Mitchell, Assistant Warden of TDCJ-ID
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Kolton Stoker, Practice Manager TDCJ/UTMB Correctional Managed Healthcare ("CMC")
Pack 1 Unit
2400 Wallace Pack Rd.
Navasota TX 77868

Michael Sizemore, Practice Manager TDCJ/UTMB CMC
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Johnathan Teaff, Captain TDCJ-ID
Powledge Unit
1400 FM 3452
Palestine, TX 75803

2.

Ronnie Stanhope, Lieutenant TDCJ-ID
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Christopher Johnson, Lieutenant TDCJ-ID
Boyd Unit
200 Spur 113
Teague, TX 75860

Nina Tanner, Food Service Captain
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Shannon Shannon, Correctional Officer III ("C.O. III")
Boyd Unit
200 Spur 113
Teague, TX 75860

Jessica Gatson, C.O. III
Boyd Unit
200 Spur 113
Teague TX 75860

Krystal Poe, C.O.III
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Yolanda Ellis, C.O. III
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Betty Reeves, C.O.IV
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Rachell West, Classification/Count-room
Boyd Unit
200 Spur 113
Teague, TX 75860

Melissa Ballard, R.N.. TDCJ/UIMB CMC
Powledge Unit
1400 FM 3452
Palestine, TX 75803

Sheriff Ed Gonzalez
Harris County Sheriff's Office
1200 Baker Street
Houston, TX 77002

K.T. Farrell, Program Supervisor III
TDCJ-ID Laundry and Food Service Headquarters
P.O. Box 99
Huntsville, TX 77342-0099

Robert D. Herrera, Warden
Pack 1 Unit
2400 Wallace Pack Rd.
Navasota, TX 77868

Michale A. Buchanan, C.O.III
Boyd Unit
200 Spur 113
Teague, TX 75860

FILING FEE AND *IN FORMA PAUPERIS* (IFP)

1.  In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2.  If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis.* In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at you prison unit.

3.  The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee."  *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or a initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from you inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.)*

4.  If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

## CHANGE OF ADDRESS

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE OF THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.   PREVIOUS LAWSUITS:

    A.  Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? XXX̄YES ___ NO

    B.  If your answer to "A" is "yes", describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

        1.  Approximate date of filing lawsuit:   June 24, 2019 (via Prison Mailbox Rule)/ July 2, 2019

        2.  Parties to previous lawsuit:

            Plaintiff(s)   Steven Kurt Baughman #2180609

            Defendant(s) Bryan Collier, Executive Director of TDCJ, et.al.

        3.  Court: (If federal, name the district; if state, name the county.) Anderson County District Court 369

        4.  Cause number:   DCCV19-1067-369

        5.  Name of judge to whom case was assigned:  C. Michael Davis

        6.  Disposition: (Was the case dismissed, appealed, still pending?)   Pending

        7.  Approximate date of disposition:   N/A

Rev. 05/15

Filed: March 27, 2018
Steven Kurt Baughman; Plaintiff
      VS.
Harris County ; Defendants
Cause No. 4:18-CV-00966
Southern District of Texas
Judge Ewing Werelin Jr.
Case is pending settlement

Filed: April 11, 2016
Plaintiff: Steven Kurt Baughman
Defendant(s): Ron Hickman, et.al.
Southern District of Texas    Cause No. 4:16-CV-00991
Judge Melinda Harmon
Dismissed after Appeal to the United States Court of Appeals
Approximately: September 2019

Filed: November 4, 2014
Plaintiff: Steven Kurt Baughman
Defendant(s): Adrian Garcia, et.al.
Southern District of Texas    Cause No. 4:14-CV-3164/ 5th Cir. No. 17-20435
Judge Nancy Atlas
Case settled in part [Defendants breached settlement agreement]; partial summary judgment. Appeal
taken to Fifth Circuit and dismissed February 25, 2019: Motion for Rehearing denied June 28, 2019;
Petition for Writ of Certiorari to the United States Supreme Court filed November 25, 2019.

Filed: October 29, 2007
Plaintiff: Steven Kurt Baughman
Defendant(s): Quarterman, et.al.
Southern District of Texas     Cause No. 4:07-CV-3607
Judge Venessa Gilmore
Dismissed September 21, 2009 while plaintiff was in Intensive Care Unit and unable to prosecute the
case or respond to dispositive motions.

Filed: June 27, 2002
Plaintiff: Steven Kurt Baughman
Defendant: Ron Ward, etal.
Western District of Oklahoma    Cause No. 5:02-CV-00896-T
Judge Ralph G. Thompson
Summary Judgment entered for defendant

Filed: July 5,2001
Plaintiff: Steven Kurt Baughman
Defendant: Viki Harless, et.al.
Western District of Oklahoma    Cause No. 5:01-CV-1032-T/ 10th Cir. No. 04-6256; 142 Fed.Appx. 354 (10th Cir.2005)
Judge Ralph G. Thompson
Settled in plaintiff's favor    June 9, 2006

Filed: March 16, 1999
Plaintiff: Steven Kurt Baughman
Defendant: James Saffle, et.al.
Western District of Oklahoma:  Cause No. 5:99-CV-0355-T / 00-6296: 24 Fed.Appx. 845 (10th Cir.2001)
Judge Ralph G. Thompson
Case settled in plaintiff's favor; November 18, 2002

Filed: March 26, 1990      by Attorney Harry Walsh
Plaintiff: Steven Kurt Baughman
Defendant: Harris County
Southern District of Texas;  Case No. 4:90-CV-1022
Judge David Hittner
Attorney failed to respond to defendant's dispositive motions. Summary judgment granted.
December 13, 1991

Filed: September 4, 1991
Plaintiff: Steven Kurt Baughman
Defendant: Carl White, et.al.
Southern District of Texas;  Cause No. 4:91-CV-02574
Judge keith Hoyt
Dismissed w/o prejudice due to plaintiff's inability to respond to order for more definate statement.
Plaintiff was given interstate compact transfer to Oklahoma from Texas and had no legal assistance.

II.   PLACE OF PRESENT CONFINEMENT: Powledge Unit, TDCJ-ID , Palestine, Texas

III.  EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?   XXX YES ____ NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.   PARTIES TO THIS SUIT:

A. Name and address of plaintiff: Steven Kurt Baughman #2180609, Powledge Unit  15-07,
1400 FM 3452, Palestine, TX  75803

B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #1: Bryan Collier, Executive Director of TDCJ, P.O. Box 99, Huntsville, TX 77342-099

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Promulgated unconstitutional policies, failed to provide adequate housing, medical and dental care

Defendant #2: Lorie Davis, Director TDCJ-ID, P.O. Box 99, Huntsville, TX 77342-0099

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

Promulgated/adopted unconstitutional policies, failed to provide adequate housing, medical and dental care,

Defendant #3: Dale Wainwright, Cahirman TBCJ, P.O. Box 13084, Austin, Tx 78711-3084

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

Failed to adequately fund TDCJ, promulgated unconstitutional policies, failed to provide adequate housing, medical and dental care to prisoners.

Defendant #4: Lanette Linthicum, Medical Director TDCJ, 2 Financial Plaza, Suite 625,
Huntsville, TX 77340-3558   [also part of the 8 member Correctional Managed Healthcare Committee]

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Promulgated unconstitutional policies which resulted in deliberate indifference to serious dental needs

Defendant #5: Owen Murray, M.D., Director of Correctional Managed Healthcare for UTMB [Member of
8 member Correctional Managed Healthcare Committee]

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

promulgated unconstitutional policies which resulted in deliberate indifference to serious dental needs of
prisoners.

Defendant #6:  Manuel Hirsch, D.D.S., Director of Dentistry TDCJ/UTMB,
          2 Financial Plaza, Suite 625, Huntsville, TX 77340-3558
Briefly Describe:
    Promulgated TDCJ/UTMB Dental Policy, Denied plaintiff adequate dental care.

Defendant #7:  "JOHN DOE"_____, D.D.S.  Byrd Unit (03/19/2018), 21 FM 247, Huntsville,TX 77320

Briefly Describe:
    Denied plaintiff adequate dental care, Denied plaintiff access to program/service due to disability
and because plaintiff was in a wheelchair.

Defendant #8:  Mary E. Baker, Senior Assistant Harris County Attorney, 1019 Congress, 15th Floor,
          Houston, TX 77002
Briefly describe:
    Breached settlement agreement, denied plaintiff adequate dental care resulting in physical injury,
pain suffering and mental anguish.

Defendant #9:  ____Linda Hidalgo_____, County Commissioner of Harris County,
          1001 Preston, Houston, TX  77002.
Breifly Describe:
    Harris County, Texas breached the settlement agreement and denied plaintiff adequate dental care
which resulted in physical injury, pain and suffering and mental anguish.

Defendant #10. Cynthia D. Tilley, Warden of the Wayne Scott Unit TDCJ-ID, 6999 Retrieve. Angelton, TX 77515

Briefly Describe:
    Denied adequate shelter, violated disciplinary due process, violations of the Americans with
Disabilities Act and Rehabilitation Act, violated plaintiff's Eighth Amendment rights.

Defendant #11: Jimmy Bowman, Warden Powledge Unit of TDCJ-ID, 1400 FM 3452, Palestine TX 75803

Briefly Describe:
    Denial of adequate medical care, violation of disciplinary due process, Americans with Disabilities
Act and Rehabilitation Act Violations, violated plaintiff's Eighth Amendment rights.

Defendant #12: Vernon Mitchel, Assistant Warden Powledge Unit of TDCJ-ID, 1400 FM 3452, Palestine,
          TX. 75803
Briefly Describe:
    Violated plaintiff's rights to disciplinary due process, denied plaintiff adequate medical care,
violations of the Americans with Disabilities Act and Rehabilitation Act

Defendant #13: Kolton Stoker, Practice Manager TDCJ/UTMB at the Pack 1 Unit, 2400 Wallace Pack,
          Navasota, TX 77868
Briefly Describe:
    Denied plaintiff adequate dental care, and denied plaintiff adequate medical care.

Defendant #14: Michale Sizemore, Practice Manager TDCJ/UTMB, Powledge Unit, 1400 FM 3452
          Palestine,TX 75803
Briefly Describe:
    Denial of access to medical care, Violation of Americans with Disabilities Act and Rehabilitation
Act.

Defendant #15: Johnathan Teaff, Captain, Powledge Unit of TDCJ-ID, 1400 FM 3452,
          Palestine, TX 75803
Briefly Describe:
    Violated plaintiff's right to due process in disciplinary proceding

Defendant #16:  ____Ronnie_____ Stanhope, Lieutenant, Powledge Unit of TDCJ-ID, 1400 FM 3452,
          Palestine, TX 75803
Briefly Describe:
    Violated plaintiff's right to disciplinary due process , participated in retaliation

Defendant #17: Christopher Johnson, Lieutenant, Boyd Unit of TDCJ-ID, 200 Spur 113, Teague, TX 75860

Briefly Describe:

Violated plaintiff's rights to due process in disciplinary hearings

Defendant #18:        Nina        Tanner, Captain of Food Serivce, Powledge Unit, 1400 FM 3452, Palestine, TX 75803

Briefly Describe:

Denied plaintiff's right to freely practice his religious beliefs without harassment, Violation of the Religious Land Use of Institutionalized Persons Act

Defendant #19: Shannon Shannon, Correctional Officer, Boyd Unit of TDCJ-ID, 200 Spur 113, Teague, TX 75860

Briefly Describe:

Retaliated against plaintiff for stating he was going to file a grievance, Eighth Amendment Violation ofr refusing to allow plaintiff access to a restroom causing plaintiff to urinate on himself.

Defendant #20: Jessica Gaston, Correctional Officer, Boyd Unit of TDCj-ID, 200 Spur 113, Teague TX 75860

Briefly Describe:

Retaliation against plaintiff for stating he was going to file a grievance, Eighth Amendment violation for denying plaintiff access to a restroom resulting in plaintiff urinating on himslef.

Defendnat #21: Krystal Poe, Correctional Officer, Powledgeunit of TDCJ-ID, 1400 FM 3452, Palestine, TX. 75803

Briefly Describe:

Denial of access to medical/deliberate indifference to serious medical need, Retaliation for exercising  free speech in requesting to speak to a supervisor and for filing grievances, ADA/RA.

Defendant #22: Betty Reeves, Correctional Officer, Powledge Unit of TDCJ-ID, 1400 FM 3452, Palestine, TX  75803

Briefly Describe:

~~Denied access to medical due to plaintiff being in a wheelchair, deliberate indifference to~~ serious medical needs.

Defendant #23:  Yolanda        Ellis, Correctional Officer, Powledge Unit of TDCJ-ID, 1400 FM 3452, Palestine, TX 75803

Briefly Describe:

Denial of access to medical personnel, Deliberate Indifference to serious medical needs.

Defendant #24:  Rachell        West, Classification/Countroom, Boyd Unit of TDCJ-ID, 200 Spur 113, Teague, TX 75860

Briefly Describe:

Denial of access to constitutional housing, harassment of handicapped offenders, violation of the Americans with Disabilities Act and Rehabilitation Act.

Defendant #25:  Melissa        Balard, R.N. TDCJ/UTMB, Powledge Unit, 1400 FM 3452, Palestine, TX 75803

Briefly Describe:

Deliberate indifference to serious medical needs of plaintiff.

~~Defendant #26: Chaplain Medlock, Powledge Unit of TDCJ-ID, 1400 FM 3452, Palestine, TX 75803~~

~~Briefly Describe:~~

~~Violation of First Amandment right to freely exercise religious beliefs, violation of the Religious Land Use of Institutionalized Persons Act.~~

~~Defendant #27: Akbar Shabazz, Regional Muslim Chaplain, Wynne Unit, 810 FM 2821 Huntsville, TX 77349~~

~~Briefly Describe:~~

~~Violation of First Amendment right to freely exercise religious beliefs, Violation of the Religious Land Use and Institutionalized Persons Act.~~

~~Defendant #28: Timothy C. Jones, Deputy Director of Religious Services for TDCJ-ID,~~
~~2 Financial Plaza, Suite 472, Huntsville, TX 77340-2558~~
~~Briefly Describe:~~
~~Violation of First Amendment right to freely exercise religious beliefs, violation of the~~
~~Religious Land Use of Institutionalized Persons Act~~

Defendant #29: Sheriff, Ed Gonzalez, Harris County Sheriff, 1200 Baker St., Houston, TX 77002

Briefly Describe:
    Breach of contract in Baughman V. Garcia, Case # 4:14-CV-3164 ; Deliberate Indifference to serious dental needs resulting in physical injury.

Defendant #30:  K.T. Farrell, Program & Services Manager TDCJ-ID Laundry and Food Services,
    P.O. Box 99, Huntsville, TX 77342-0099
Briefly Describe:
    Violation of Religious Land Use of Institutional Persons Act

#30: Robert D. Herrera, Warden of TDCJ-ID's Pack 1 Unit, 2400 Wallace Pack Rd. Navasota, TX 77868

Briefly Describe:
    Violation of American's with Disabilities Act and Rehabilitation Act, Denial of adequate medical care, Retaliation against plaintiff for exercise of First Amendment Rights.

Defendant #31:Michael A Buchanan, TDCJ-ID Officer at Boyd Unit, 200 Spur 113, Teague, TX 75860

Briefly Describe:
    Violation of the Eighth Amendment rights of plaintiff, violation of the American's with Disabilities Act and Rehabilitation Act

~~Defendant #32: Sgt. Fisher, Food Service Supervisor at Powledge Unit, 1400 FM 3452, Palestine, TX 75803~~
~~Briefly describe:~~
~~Violation of the First Amendment rights of plaintiff to freely practice religious beliefs,~~
~~violation of the Religious Land Use of Institutionalized Persons Act.~~

V.    STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how <u>each</u> defendant is involved. <u>You need not give any legal arguments or cite any cases or statutes.</u> If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.                    INTRODUCTION

This is a civil rights action filed by Steven Kurt Baughman, a state prisoner appearing Pro Se and In Forma Pauperis, for damages and injunctive relief under 42 USC § 1983, alleging violation of his constitutional right to receive adequate medical and dental care, violation of his constitutional right to adequate shelter and conditions of confinement, under the Eighth Amendment to the Constitution of the United States. Plaintiff also seeks damages and injunctive relief pursuant to the Americans with Disabilities Act; 42 USC §§ 12101 et.seq., and the Rehabilitation Act 29 USC § 794, Section 504. Plaintiff further alleges his constitutional right to free speech and to petition the government for redress of grievances was violated through retaliation in the form of false disciplinary allegations in violation of the First Amendment to the Constitution of the United States; while also alleging violation of Due Process in the

VI.   RELIEF:

State briefly exactly what you want the court to do for you.    Make no legal arguments. Cite no cases or statutes.

Plaintiff seeks damages and injunctive relief, specific performance, and any and all other and further remedy the Court deems just and proper., and Declaratory Judgment declaring plaintiff's Constitutional rights were violated.

VII.  GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.
Steven Kurt Baughman

B. List all TDCJ-CID identificaiton numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

TDCJ-ID # 394684, #528637, #2180609;  Oklahoma D.O.C. #928637 (on I.C.C. transfer fro TDCJ-ID)

VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ____YES _XXX_ NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1.  Court that imposed sanctions (if federal, give the district and division): _____

2.  Case number: _____

3.  Approximate date sanctions were imposed: _____

4.  Have the sanctions been lifted or otherwise satisfied?                     ____YES  _·_ NO

Rev. 05/15

12

disciplinary hearing through denial of exculpatory documentary evidence, denial of the ability to call witnesses, denial of an impartial decision maker, and through denial of notice of alleged rules which violated plaintiff's rights to Due Process under the Fourteenth Amendment to the Constitution of the United States, for which he seeks damages and injunctive relief. Plaintiff alleges violation of his right to freely practice his religious beliefs in violation of the First Amendment to the Constitution of the United States and/or in violation of the Religious Land Use of Institutionalized Persons Act, 42 USC § 2000cc, for which he seeks damages and injunctive relief. Lastly, Plaintiff invokes the Supplemental Jurisdiction of the Court, pursuant to 28 USC § 1367, to hear a state law claim regarding a breach of contract where defendants failed and/or refused to comply with the full terms of a settlement agreement; had in the Southern District Court of Judge Nancy Atlas; in which defendants were to provide plaintiff with full dental restoration including caps, crowns, fillings, and partial dentures. Defendants' breach of this settlement agreement has resulted in deterioration of plaintiff's teeth resulting in severe pain, abscesses, loss of bone in the jaw, and will now necessitate the removal of 2 organs (teeth) which could have been saved "but for" the now 30 month delay in filling the teeth and completing the dental restoration they were under contractual obligation to complete. After extraction of the teeth plaintiff's bottom partial dentures will have to be remade. Where this breach of contract has resulted in permanent physical injury, loss of body parts, pain, suffing and mental anguish plaintiff XXXXXXXXXXXX seeks damages, and injunctive relief, specific performance as to completion of all necessary restorative dental work and the remaking of dentures by an outside dentist along with transportation to and from the outside dentist (D.D.S. Ronald J. Cook, 190 N. Mallard Street, Palestine, TX 75801). Plaintiff seeks any further relief the Court may deem just and proper.

## II.  Jurisdiction

2.  Jurisdiction of this court is invoked pursuant to 28 USC § 1331 in that this is a civil rights action arising under the Constitution of the United States.

3.  Jurisdiction of the Court is invoked pursuant to 28 USC § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4.  Jurisdiction of the Court is invoked pursuant to 28 USC § 1367 where the Court has Supplemental Jurisdiction to hear state law claims arising from the same facts.

## III.  Facts
### Breach Of Contract / Settlement Agreement

5.  On April 1, 2014 Plaintiff was booked into the Harris County Sheriff's Jail (" HCSOJ ") and held as a pretrial detainee, and he was denied adequate dental care. This resulted in Plaintiff filing a § 1983 civil rights complaint in the United States District Court For the Southern District of Texas- Houston Division; styled Steven Kurt Baughman V. Adrian Garcia; Cause No. 4:14-CV-3164.

6.  Defendants filed a motion for summary judgment, which was denied in part and granted in part, on May 26, 2017. Baughman V. Garcia (Doc. 199).

7.  Senior District Judge Nancy Atlas appointed counsel to represent plaintiff on or about 02/24/2016 (Doc.110).

8.  After denial of summary judgment as to plaintiff's deliberate indifference to serious dental needs claims (Doc. 199) entered on May 26, 2017, the Court ORDERED Magistrate Judge Dena Hanovice Palermo to conduct Mediation (Doc. 200, 201) also entered into the record May 26, 2017.

9.  On June 13, 2017 Mediation was held and an Mediation Agreement was Signed, (Doc.202). See Appendix attached herewith. Exhibit 1.

10. Pursuant to the terms of the Mediation Agreement settlement terms were set as follows:

   1. The Defendants will arrange, through Harris County Jail, which the Harris County Sheriff's Office operates, for Plaintiff to receive dental treatment from a dentist at the Harris County Jail, at no cost to Plaintiff, as follows:

      a. A comprehensive dental and periodontal examination, which will include full x-rays; and

      b. Cleaning, polishing, and floride treatment of Plaintiff's teeth.

   2. Harris County will also arrange for Plaintiff to receive dental treatment from an outside dentist at no cost to Plaintiff, as follows:

      a. The appropriate teatment for any cavaties, as determined and recommended by the dentist in consultation with Plaintiff, and

      b. The appropriate treatment for dentures, as determined and recommended by the dentist in consultation with Plaintiff.

   3. The Defendants will pay the sum of $2,000 to the Plaintiff, upon receipt of a fully executed Settlement and Release Agreement ("Agreement") from Plaintiff. The Payment will be delivered to Plaintiff's attorney.

   4. The dental treatment will be completed before plaintiff's criminal case goes to trial, which is currently scheduled for October 2017. If the work is not completed before the trial, Plaintiff can agree to extend the deadline.

   5. Counsel for Defendants will send a copy of Judge Nancy Atlas's Memorandum and Order (DKT. #199) to the current Sheriff for Harris County by mail return receipt requested. The cover letter shall sate that the letter serves as notice that this case has been settled. In addition, the letter will ask the Sheriff to take notice of Judge Atlas's findings with respect to the dental care. Defendants' counsle will provide plaintiff's counsel with the signed return receipt card and a copy of the transmittal letter to the Sheriff.

   6. Counsel for the Defendants will draft the Agreement, which will include the Agreed Motion to Dismiss with Prejudice. Defendant will deliver the Agreement to Plaintiff no later than June 23, 2017. Plaintiff will provide Defendant with an executed copy of the Agreement no later than June 30, 2017.

   7. Plaintiff agrees to file the Agreed Motion to Dismiss within five days of payment in full of the settlement.

8. The terms of this settlement agreement are confidential.

9. Judge Atlas will conditionally dismiss this matter. In the event the Parties are unable to finalize the settlement, either Party may request that the case be reinstated and request an expedited trial setting.

10. The parties agree that, in the event of any dispute regarding the drafting of the Agreement, the Parties will return to Judge Palermo for additional mediation.

See Appendix, Exhibit 1.

11. The Agreement was drafted and signed on June 30, 2017, as agreed in Mediation.

12. Pursuant to the Agreement, "For this Release to be effective, the dental care described above must be completed before the begining of Plaintiff's criminal trial...which is currently scheduled for October 9,2017. If the work is not completed before the trial, Plaintiff can agree to extend the deadline...." See Appendix, Exhibit 2.

13. By December 12,2017, Defendant's were in Breach of the Agreement as noted in a letter from Plaintiff's attorney, Blayne Thompson to Mary E. Baker Defendants' attorney. See Appendix, Exhibit 3 and 4 (Mary E. Baker's response).

13. Pursuant to the Agreement Harris County was to be responsible for paying for dental restoration, from an outside dentist, and the dental work was to be completed prior to plaintiff going to trial. The dental restoration was to include, but was not limited to fillings, crowns, and the making of partial dentures. Plaintiff was to be paid $2,000 in damages for deliberate indifference to his serious dental needs; while in the Harris County Jail.

14. On December 4,2017, Plaintiff's criminal trial began and on December 6,2017, Plaintiff was convicted of Aggrivated Assault with a Deadly Weapon and Felon in Possession of a Firearm and was sentenced to 30 years confinement in the Texas Department of Criminal Justice-Institutional Division ("TDCJ-ID") with time backdated to April 1, 2014 [the date he was arrested and began detention in the Harris County Jail]. However, the dental work agreed to had not been started and Defendants were in Breach of the Contract. See Appendix, Exhibits 1-4.

15. From December 21, 2017,through February 21,2018,Defendants gave partial consideration, but did not complete Plaintiff's dental restoration per the Agreement. Per terms of the Agreement," For this Release to be effective, the dental care described above must be completed before the begining of plaintiff's criminal trial..." See Appendix Exhibit 2

16. On February 23,2018, plaintiff was transferred from the Harris County Jail ("HCSOJ") to the Texas Department of Criminal Justice-Institutional Division ("TDCJ-ID") and his dental work had not been completed.

17. Per the settlement agreement, HCSOJ/Harris County was responsible for completing Plaintiff's dental work, at their expense (including any transfer and transportation expenses), but has failed to complete the dental work, despite Plaintiff's attorney, Blayne Thompson, staying in constant contact with Mary E. Baker, while insisting that Harris County make arrangements to have the work completed. See Appendix Exhibits 4-5

15.

18. When plaintiff was received by the TDCJ-ID on February 23, 2018, he had two (2) teeth (#8 & #9) which required porcelain crown and he had 8 cavities which required fillings. Out of those teeth #20 and #21 required immediate attention, to prevent deterioration of the teeth and to preserve them; due to the fact they are two of the teeth his lower-partial dentures fastened to. See Appendix Exhibit 8 "Harris County Sheriff's Office, Dental Examination, dated June 29, 2017" (3 pp.) plus "DENTAL: ANNUAL AND JUVENILE EXAMINATION FORM."

19. The dental work was not completed and as of this date plaintiff has received no dental care since being transferred from the HCSOJ to the TDCJ-ID.

20. Plaintiff's teeth have been allowed to deteriorate to the point that teeth #20 and #21 abscessed; causing severely painful tooth aches; in fact they abscessed so badly that the abscess caused bone in the lower mandibular area to deteriorate (bone loss due to infaction) The teeth (#20 & #21) now require surgical removal; and after the dental restoration of the 6 remaining cavities is done the Mandibular partial-denture will have to be remade. See Appendix Exhibit 9 "Dental Examination and Periodontal Charting, done by Ronald J. Cook, D.D.S." on May 30, 2019.

21. On May 30, 2019, Plaintiff was taken out of TDCJ-ID, on "Bench-Warrant," by Harris County/HCSOJ and taken to Ronald J. Cook, D.D.S. for comprehensive dental and periodontal examination and treatment plan; but nothing has been done since.

22. The results of the dental and periodontal examination determined Plaintiff needed the following:

| Tooth No. | Description of Restoration/Treatment Needed |
|---|---|
| 8 | Crown- Porcelain/High Noble |
| 9 | Crown- Porcelain/ High Noble |
| 11 | Filling- Resin Composite |
| 20 | Surgical Removal of Erupted |
| 21 | Surgical Removal of Erupted |
| 22 | Filling Composite/Incisal Angle/or 4+ |
| 23 | Resin Composite filling |
| 26 | Resin Composite filling |
| 27 | Resin Composite Filling |
| 28 | Resin Composite Filling |
| | Mandibular Partial Denture |

Per Dental Examination conducted on May 30, 2019 by Ronald J. Cook, D.D.S., See Appendix Exhibit 9.

23. Plaintiff has suffered physical injury, pain, will suffer loss of body part, and mental anguish as the result of Harris County's Breach-Of-Contract.

24. Mary E. Baker, the Harris County Commissioner, and Sheriff of Harris County have not only breached the contract, but have acted with deliberate indifference to Plaintiff's serious dental needs; in violation of the Eighth Amendment to the Constitution of the United States, through delay and denial of dental treatment which has resulted in physical injury, pain, suffering, mental anguish and necessitates future pain and suffering and mental anguish as well as the permanent loss of two parts of Plaintiff's body (teeth #20 and #21) which would not have occurred "but for" the delay and denial of the agreed dental restoration. "See Appendix Exhibit # 14 Grievance # 2019110143.

25. Where Mary E. Baker, the Harris County Commissioner, and the Harris County Sheriff each, as individuals were responsible for the delay and denial of treatment, they are liable for monetary damages in their individual capacities [compensatory, punative, and general or presumed damages),

for deliberate indifference to the serious dental/medical needs of plaintiff which resulted in physical injury and violated plaintiff's rights to adequate dental care under the Eighth Amendment to the Constitution of the United States.

26. On December 9, 2019, tooth #20 fractured & broke-in-half, while plaintiff was eating, due to the deterioration caused by the 30 month denial and delay in filling the cavity in tooth #20.

27. Mary E. Baker, Harris County Sheriff, and/or the County Commissioner sought to have plaintiff sign a New Release and Settlement Agreement, in which they agreed to pay for plaintiff's dental restoration which they are already under contractual obligation to complete; pursuant to the Agreement entered into on June 30. 2019. See Appendix Exhibit 15 "Newly proposed Release and Settlement Agreement."

28. In this "New Agreement " Defendants sought to be released from all damages resulting from their breach of contract and the new deliberate indifference to serious medical/dental needs. See Appendix Exhibit 15.

29. Plaintiff rejected this "New Agreement," and informed defendants that if they failed to provide the dental treatment agreed to on June 30, 2017, and pay damages for the injury caused by their 30 month breach of contract;which resulted in physical injury to plaintiff;he would file suit for breach of contract [pursuant to State Law] and seek monetary damages for deliberate indifference to serious medical/dental needs through denial and delay of dental treatment.

30. Where Mary E. Baker, Harris County Sheriff, and/or Harris County Commissioner breached the Original Settlement Agreement, entered into on June 30, 2017, plaintiff seeks injunctive relief in the form of a judgment/order for immediate completion of all dental restoration; including but not limited to cleaning of the teeth, floride treatment, fillings, caps, crowns, and the remaking of the bottom partial dentures; in accordance with the treatment plan assessed by Ronald J. Cook, D.D.S.; at no cost to the plaintiff; and that defendants make arrangements with the dentist and provide transportation to and from the dentist for completion of the dental restoration. See "Original Agreement," Appendix Exhibit(s) 1 and 2.

### Deliberate Indifference and Interferrence With Settlement Agreement

31. Defendants Lorie Davis and Manuel Hirsch are sued in their individual capacities for damages associated with deliberate indifference to plaintiff's serious medical/dental needs and/or interferrence with a contract/settlement agreement which caused physical injury to plaintiff and caused plaintiff severe pain and suffering,and mental anguish.

32. Mary E. Baker attests to the fact she contacted Lorie Davis and Manuel Hirsch, D.D.S., and informed them that plaintiff required immediate dental care and that Harris County was under contractual obligation to provide such dental care, through an outside dentist, and that Harris County was to provide the security and transportation to and from a private (outside) dentist for completion of plaintiff's dental restoration. See "Mary E. Baker's letter to Magistarte Judge Dena Hanovice Palermo, on October 10, 2018." Appendix Exhibit 5.

33. Defendants Lorie Davis and Manuel Hirsch, D.D.S., did thereafter deny and delay plaintiff's dental restoration by Harris County form February 23, 2018, through the present date, which has resulted in the deterioration of plaintiff's teeth, caused abscesses, loss of bone in the lower jaw as a result of the abscesses, caused the fracturing of tooth #20 and resulting in the necessity of surgical removal of teeth #20 and #21 [which could have been saved with fillings when plaintiff first entered TDCJ-ID].

34. Defendant Lorie Davis and Mauel Hirsch, D.D.S. acts and/or omissions in denying and delaying dental treatment constitutes deliberate indifference to plaintiff's serious medical/dental needs in violation of the Eighth Amendment to the United States Constitution where it was their personal/ individual decisions to deny and delay plaintiff's treatment and they are thereby liable to plaintiff for compensatory and punative damages, and/or general damages/presumed damages, in their individual capacities.

35. Defendant Bryan Collier (Executive Director of TDCJ), Lorie Davis (Director of TDCJ-ID), and/or Manuel Hirsch, D.D.S. (Director of Dental Services for TDCJ/TDCJ-ID/UTMB) are sued in their official capacities for denial and delay of dental treatment to plaintiff and/or for interferrence with a Settlement Agreement between plaintiff and Harris County; for which plaintiff seeks injunctive relief in the form of an Order to defendants to cease with their interferrence with the contractual agreement and to allow Harris County to transport plaintiff to and from an outside dentist to complete plaintiff's dental restoration per the Mediation Agreement, entered into on June 13, 2017, In The United States District Court For The Southern District Of Texas, in the case of Baughman V. Garcia; Cause No. 4:14-CV-3164, and pursuat to the Release and Settlement Agreement entered into by plaintiff Baughman and Harris County on June 30, 2017.

### Deliberate Indifference and Violation of Title II
#### Americans with Disabilities Act / Section 504 of the Rehabilitation Act

36. On March 19, 2018, plaintiff was seen by D.D.S. "JOHN DOE" _____ at the Byrd Unit of the TDCJ-ID, for a dental intake examination.

37. The defendant D.D.S. "JOHN DOE" _____ is sued in his individual capacity where he acted with deliberate indifference to plaintiff's serious dentalneeds in performing a cursory [visual] dental examination in which defendant refused to chart plaintiff's dental abnormailites, denied plaintiff fillings for cavities, told plaintiff he would have to wait until he had been on a Unit of assignment for at least 12 months before he could request a comprehensive dental examination, dental treatment for dental carries, receive a dental treatment plan and fillings.

38. Defendant denied plaintiff dental x-rays/radiographs/panographs and refused to document plaintiff's actual dental condition. See Appendix Exhibit 10 and compare the charting of plaintiff's dental problems by defendant with Exhibit 8 (dental exam conducted June 21 & 29, 2017) and Exhibit 9 (dental exam complete on May 30, 2019). The comparison will show defendant acted with deliberate indifference in intentionally making a false dental record in not charting dental abnormalities, thus acted

with deliberate indifference to plaintiff's serious dental/medical needs in violation of the Eighth Amendment.

39. This is not a case of mere misdiagnosis, not a case of disagreement with medical opinion, nor is this a case of mere malpractice or negligence, but is a case of deliberate indifference, in violation to the Eighth Amendment to the Constitution of the United States; as the evidence will show.

40. The defendant denied plaintiff necessary fillings, stating plaintiff would have to wait until he was at his Unit of assignment for at least 12 months before he could receive fillings, a comprehensive dental exam , or a dental treatment plan. Thus, delaying and denying plaintiff necessary dental treatment to prevent further deterioration of teeth #20 and #21. These teeth are noted in Exhibit 8 as requiring fillings and crowns or possibly extraction as far back as June 21, 2017, and due to the delay and denial caused by the defendant, tooth #20 has deteriorated to the point it has broken in half and both #20 and #21 now require surgical removal. See Appendix Exhibit 9 and this sworn complaint which serves as an affidavit.

41. Turning again to Appendix Exhibit 10 note where defendant deliberately delays treatment to the plaintiff through noting "Highest Level of Care: Level 3." Level 3 dental care is as follows:

> Level of Care 3 are rehabilitative and are not designed to improve or correct chronic teeth or gum problems. These may include scaling and root planning to aid in controling gum disease. cleaning, fillings, stainless steel crowns, root canals on front teeth.(if the tooth is salvagable). and oral surgery to remove non-treatable. diseases. or impacted teeth, that in the opinion of the dentist could impair the patient's overall health if left untreated. Level 3 care is only available after you have served 12 months from the date you arrived in the TDCJ system. In addition to being incarcerated 12 months in TDCJ, you must also maintain an acceptable level of oral self-care. All Level 1 and 2 care must be in compliance at your facility before any Level 3 care can be done.

See Appendix Exhibit 11.

42. Turning again to Appendix Exhibit 10 the court will note that defendat not only acted with deliberate indifference to plaintiff's serious dental needs; through denying plaintiff fillings and intentionally failing to chart plaintiff's urgent dental needs;defendant discriminated against plaintiff, due to plaintiff being physically handicapped and unable to walk. Defendant denied plaintiff dental x-rays, radiographs, and/or panographs because plaintiff was in a wheelchair;as is noted in the defendant's own handwriting on the " DENTAL SERVICES RECORD INPROCESSING EXAMINATION (HSD-3)" form. This such denial of dental x-rays, radiographs, and/or panographs constitutes a violation of Title II of the Americans with Disabilities Act, and/or a violation of Section 504 of the Rehabilitation Act where the defendant clearly notes "Panograph available ?(N)Pt. in Wheelchair." And is further evidence of defendant's deliberate indifference to plaintiff's serious dental/medical needs, and is further proof of deliberately indifferent examination.

43. Defendant is therfore liable in his individual capacity for personally denying plaintiff dental treatment and examination, and/or delay of tretment in a fashion that was deliberately indifferent to plaintiff's serious medical/dental needs, in violation of the Eighth Amendment to the United States Constitution; and such deliberate indifference resulted in physical injury to plaintiff. See Appendix

Exhibit(s) 12(TDCJ Offender Grievance Step 1 & 2 #2018179084), Exhibit 13 (TDCJ Offender Grievance Step 1 & 2 #2019019211) and Exhibit 14 (TDCJ Offender Grievance #2019110143) regarding plaintiff's deliberate indifference claims, breach of contract claims, and Americans with Disabilities Act / Rehabilitation Act claims.

44. Plaintiff is a qualified individual under the Americans with Disabilities Act and Rehabilitation Act where he is a insulin-dependent diabetic, he has a degenerative spinal condition, is wheelchair-dependent, and has a bladder condition which causes incontenance, he has Stage III kidney disease, and his diabetic complications limit his ability to eat certain foods and cause frequent urination [making it difficult to maintain personal hygiene].

45. Pursuant to the Americans with Disabilities Act and Rehabilitation Act exclusion from medical/dental services, which are programs, services, or activities under these Act(s); due to disability; constitutes both an Eighth Amendment claim and a disability claim.

46. Defendant(s) Kolton Stoker, Michael Sizemore, and D.D.S. "JOHN DOE"                    clearly state plaintiff was denied dental x-rays, radiographs, and panographs, on March 19,2018, due to plaintiff being in a wheelchair. See Appendix Exhibit 10 where the HSD-3 form states plaintiff was denied panographs because" Pt. In Wheelchair,"; also Exhibit 12-14 clearly state plaintiff was denied x-rays, radiographs, and panographs during intake dental exam due to plaintiff being in a wheelchair.

47. Such discrimination due to plaintiff being in a wheelchair constitutes both a disabilities act violation and an Eighth Amendment violation where defendants acted with deliberate indifference to plaintiff's serious dental needs due to his disability.

48. Defendants Kolton Stoker and Michael Sizemore had the authority to order the Unit dentists of Pack 1 Unit and Powledge Unit to see plaintiff and do a comprehensive dental examination (including x-rays/radiographs/panographs, and charting of dental and periodontal disease); and do a dental treatment plan; and perform treatment in the form of filling cavaties; but defendants refused to do so.

49. Plaintiff filed numerous requests to dental and to Defendants Stoker and Sizemore, requesting a comprehensive dental examination be done to develop a dental treatment plan and the dental restoration be completed; but plaintiff's requests were either not responded to or were denied. See Appendix Exhibits 12 and 13.

50. Although plaintiff's teeth (#20 and #21) were salvageable at intake, on February 23, 2018, the cavaties were not filled and plaintiff was denied treatment to save/preserve them and to prevent further deterioration. See Appendix Exhibit 14.

51. On April 17, 2019, plaintiff gained access to the Powledge Unit dentis and was informed of the following:

(1). Plaintiff had been in TDCJ-ID for over 12 months and he could now request a dental request a dental treatment plan be developed;

(2). Teeth #20 and #21 could not be saved now and would require extraction;

(3). Once teeth #20 and #21 were extracted plaintiff's bottom dentures would be useless. because

    the bottom partial dentures clipped to teeth #20 and #21;

(4). TDCJ/UTMB Correctional Managed Care would not replace the denture; as their policy did not provide for partial dentures.

(5). Teeth #8 and #9 could be shaved-down to where they would not continue to cut plaintiff's tongue, but TDCJ/UTMB would not provide caps or crowns.

52. Plaintiff was thereby treated with deliberate indifference to his serious dental needs, where he was denied and delayed in receiving dental treatment in a timely manner to save teeth #20 and #21 by TDCJ/UTMB Correctional Managed Care, Lorie Davis, and Manuel Hirsch, D.D.S., who were personally informed of plaintiff's urgent dental needs by Harris County Attorney Mary E. Baker and they denied and delayed treatment to plaintiff until irreparable harm occurred.

53. Lanette Linthicum, Owen J. Murray, Manuel Hirsch, D.D.S., Lorie Davis, Bryan Collier, and Dale Wainwright, each were involved in promulgating and/or adopting the unconstitutional dental policies of TDCJ/UTMB Correctional Managed Care (E-36.0 et.seq., and the Dental Rules found in Appendix Exhibit 11) and are sued in their individual capacities for promulgating unconstitutional dental policies which resulted in physical injury to plaintiff, for which plaintiff seeks compensatory and punitive monetary damages.

54. Defendant's policies operated in a fashion to delay and deny treatment to plaintiff for over 12 months and resulted in irreparable harm to the plaintiff and resulted in the loss of teeth #20 and #21 and caused plaintiff needless pain, suffering and mental anguish. The policies promulgated and/or adopted by these defendants also denied plaintiff replacement of his bottom partial dentures, which would not have needed replacement "but for" the denial and delay of treatment which resulted in the deterioration of teeth #20 and #21 which the dentures clip to. See Appendix Exhibits 14 and 16.

55. Lanette Linthicum, Owen J. Murray, Manuel Hirsch, D.D.S., Bryan Collier, Lorie Davis, and Dale Wainwright are sued in their official capacities for injunctive relief in which plaintiff requests promulgation of NEW DENTAL POLICIES and PROCEDURES which would eliminate the current 12 month delay in receiving dental evaluation, treatment plan, and treatment; and doing away with the prerequisite that Level 3 Care be provided only when all Level 1 and 2 Care is caught-up by the facility dentist (where they have understaffed the dental departments at the Units and such care will never be caught-up until a sufficient number of dentists are hired); and lastly they be required to adequately staff all Unit Dental Departments so that prisoner's urgent and routine dental care needs are addressed in a timely fashion.

## Denial Of Adequate Shelter
## Powledge Unit

56. Defendants Dale Wainwright, Bryan Collier, Lorie Davis, and Jimmy Bowman are sued in their Official capacities for injunctive relief where they have failed to provide adequate shelter for wheelchair-dependant inmates as follows:

1). The medical waiting area ("the cage") has room for 20 able-bodied inmates, but only has space for one wheelchair-bound prisoner; despite the fact the Powledge Unit has over

100 wheelchair-bound prisoners, or about 10% of the prison's population. <u>See Appendix Exhibits 17 and 18.</u>

~~2)   Doorways, dormitory cubicle entrances, and isles are too narrow to accommodate 24" wheelchairs; posing a fire and safety hazard; and the doorways in medical are too narrow for 24" wheelchairs to get in and out of the doors; creating a hazard to health and safety, while further violating the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA");~~

~~3)   Wheelchairs cannot navigate two-way traffic in the clothing exchange line; posing a fire and safety hazard. Clothing should be delivered to the wheelchair dorms, as done a Pack 1 Unit, or the clothing exchange needs to be moved to the laundry door in the hallway;~~

~~4)   The showerroom does not have ADA/RA compliant handicapped shower; making it difficult for handicapped inmates to maintian good hygiene;~~

~~5)   The showers in 15 and 16 dorms are not ADA/RA compliant and have porous concrete benches instead of stainless steel; and cannot be sanitized between uses; making the showers a hazard to the health and safety of the users by exposing them to bacterial infection, feces, and urine lurking in the porous concrete from the previous user. Stainless steel benches must be installed;~~

~~6)   Inmates must be given cleaning materials and chemicals (spray bottles) to be kept in the restrooms for cleaning the showes and toilets between uses. If caught in an imates cell/ cubicle he should be issued a disciplinary case for possession of contraband. Currently, such cleaning supplies are not issued for the restrooms, in violation of the Eighth Amendment where a sanitary enviroment is a basic human need that penal institutions must provide.~~

7).   "The cage," in the Medical Department is used as the ONLY respite area on weekends,during the summer, from 8:00-17:00 hours, and no more than 1 wheelchair-bound prisoner can access the respite area to escape heat indexes in excess of 100°F. The Cage has room for 20 able-bodied prisoner, but only alot's space for 1 wheelchair; thereby subjecting all but 1 from heat related illness and torturous and inhumae conditions of confinement; in violation of the United States District Court ORDERS in Cole V. Collier; cause No. 4:14-CV-01698; Judge Keith Ellison presiding. <u>See Appendix Exhibit 17 Grievance#2019093715 & Exhit 26.</u>

8).   TDCJ/Powledge Unit often denies wheelchair accessible transportation to medical appointments, and wheelchair-bound inmates are often written disciplinary infractions for not dragging themselves into regular TDCJ transport and/or they are shown as refusing treatment when TDCJ/UIMB denies wheelchair accessible transportation. <u>See Appendix Exhibits 19 and 21.</u>

<u>Deliberate Indifference To Serious Medical Needs</u>
<u>Through Denial Of Access To Medical Provider</u>

57.   Defendants Krystal Poe, Betty Reeves, Yolanda Ellis, and Melissa Ballard, R.N. are sued in their

individual capacities for deliberate indifference to serious medical needs through denial of access to medical care providers/physicains.

58. Plaintiff suffers from Type II Insulin-dependent Diabetes Mellitius and diabetic complications, including but not limited to, venous insufficiency, neuropathy, and reoccurring cellulitis.

59. Cellulitis-is a diffuse spreading infection usually of the lower legs and feet, which can be predisposed by venous insufficiency and is often associated with diabetic neuropathy, which may be a major problem in diabetic feet and legs [leading to amputation of toes, feet, and legs] necessitating hospitalization. It is treated with interveneous antibiotics, but can be treated with oral antibiotics such as Minocycline. See "Current Medical Diagnosis & Treatment;" Papadakis, McPhee, and Rabow; McGraw Hill/Lange pub. 2014, pp. 133-34.

60. Cellulitis constitutes serious medical need.

61. Plaintiff developed cellulitis on or about 03/09/2019 and showed R.N. working at the diabetic clinic that his legs were red, swollen, and feverish, and he could not even wear his shower shoes due to how badly they were swollen.

62. Diabetic Clinic RN denied plaintiff immediate care and told plaintiff to put in a sick call request; which plaintiff did.

63. On 03/13/2019 plaintiff was given an Official TDCJ-ID Layin Pass, to see Charles Adams, M.D., at 8:00-8:30 hours. [A layin pass is to notify guards you are off work and to allow a prisoner off the cellbolck to access medical or where ever the pass says the inmate is supposed to go.]

64. At 8:00 hours plaintiff presented his pass to Defendant Krystal Poe (Officer working on 1 block where plaintiff is housed) and told her plaintiff had to go to medical for a physican's appointment.

65. Defendant Poe refused to allow plaintiff off the cellblock, to go to medical. She said she had called medical and Defendant Betty Reeves told her that there was already a wheelchair in "The Cage," and for Defendant Poe not to let plaintiff off the cellblock.

66. Plaintiff showed Defendant Poe his legs and feet and told her that he had to see the doctor to get antibiotics to kill the infection or he could end up losing his leg.

67. Still Defendant Poe refused to allow plaintiff access to medical and she stated that she didn't care what was wrong with the plaintiff, or who he had to see, Reeves said they'll call if they need you.

68. Plaintiff didn't gain access to medical until he had to go for diabetic clinic around 15:00 hours; for his daily insulin injection [after Defendant Poe and Reeves got off work and shift had changed], and he requested to speak to Dr. Adams, but was told Dr. Adams was gone for the day and would not be back until the following Monday. The nurse also informed plaintiff he had been written down as a no show by Defendant Reeves. See Appendix Exhibit 17 Grievance #2019093715.

69. Plaintiff was told to put in another sick call request to see the doctor.

70. Before leaving the clinic plaintiff spoke to Defendant Sizemore about what had happened and Defendant Sizemore told plaintiff that Dr. Adams was gone for the day and thre was nothing he could do about it.

71. Plaintiff returned to the cellblock and called Linda Pugh of the Inmate Assistance League and told her he had cellulitis and how badly his feet and legs were swollen, how much they hurt, and how he had been denied access to medical by Defendants Poe and Reeves.

72. Mrs. Pugh assured plaintiff she would make some phone calls, on plaintiff's behalf, and see if she could get the plaintiff into medical.

73. On 03/14/2019 Sgt. Vaughn came to plaintiff's cubicle [1 block, 15 dorm, cubicle 7] and told plaintiff he was there to escort plaitiff to medical, per orders of the Warden and Major, because someone had been calling them about plaintiff being denied access to medical and treatment of some-kind the day before.

74. Sgt. Vaughn escorted plaintiff directly to Irene Oyolu, M.L.P., and he told her he had to stay with me in the examination room, because he had to report back to the Warden and Major,who wanted to know what was wrong with the plaintiff and what treatment, if any would be prescribed.

75. Oyolu, diagnosed plaintiff as having cellulitis and prescribed 100 mg. Minocycline,twice a day for 10 days,for the infection,and prescribed that the plaintiff was to wear compression stockings.

76. On or about 03/14/2019 plaintiff filed Grievance #2019093715 regarding Defendant Poe and Reeves acting with deliberate indifference to plaintiff's serious medical needs, through denying him access to medical providers; even-though he had a pass to go to medical. See Appendix Exhibit 17.

77. On or about 09/14/2019 Plaintiff again developed cellulitis and presented it to medical staff at the diabetic clinic; showing his legs and feet to be swollen, red, feverish and Defendant Ballard told him to submit a sick-call request.

78. On 09/23/2019 plaintiff received a Official Layin Pass for 20:00 hours, to access "Nurses Sick Call," and he presented the pass to Defendant Yolanda Ellis [the guard working 1 block] and requested to be allowed off the dorm to go to medical and he was denied access to medical by the defendant.

79. Defendant Ellis stated she had to call medical and when she did Defendant Melissa Ballard, R.N., told her not to let plaintiff off the cellblock,because she was not running nurses-sick-call.

80. On 09/24/2019 plaintiff went to 03:30 hours diabetic clinic for insulin and Defendant Ballard was running the diabetic clinic.

81. Plaintiff received his insulin and told Defendant Ballard that Mrs.Ellis would not let him off 15 dorm at 20:00 hours for nurses-sick-call (7 hours earlier) and that he still had cellulitis; it had gotten worse in the past 10 days (since he first presented her with his serious medical need) and he needed to see the physician to be prescribed antibiotics.

82. Defendant Ballard said, " I told Mrs.Ellis to tell you we weren't running sick-call at 8 p.m. and for her not to send you to medical."

83. Defendant Ballard went on to say she didn't give a damn about plaintiff having cellulitis and told him to put in another sick-call-request.

84. This made the third time in two weeks that Defendant Ballard had refused plaintiff medical care or access to a physician; thereby allowing his condition to become worse, and causing him needless pain.

85. On 09/24/2019, at approximately 17:00 hrs, plaintiff was in the diabetic clinic for insulin and

spoke to Veronica Shafner,R.N., and the L.V.N. working with her and explained to them how Defendant Ballard had denied him treatment for his cellulitis, delayed his gaining access to a physician, and had been giving him the run-around.

86. Mrs. Shafner and the L.V.N. examined plaintiff's legs and feet and then spoke with Irene Oyolu; who had previously treated plaintiff for cellulitis; and again plaintiff was prescribed Minocycline 100 mg. Bid. X 10 days; to treat the cellulitis.

87. Mrs. Shafner said that"Ballard should have seen you as a walk-in, where you obviously had cellulitis and required treatment to keep it from getting worse."

88. Plaintiff filed two seperate grievances; one against Mrs. Ellis for refusing his access to medical and one against Mrs. Ballard for deliberate indifference to serious medical needs; where the grievance department likes to play this game where if a prisoner writes medical up the indifference is blamed on security and if the grievance is filed on security it's blamed on medical. (As they have done in the instant case). See Appendix Exhibits 27 and 28 .

89. On 09/27/2019 the L.V.N. who 'helped' Mrs. Shafner treat me on 09/24/19 told plaintiff that he had really stirred " some stuff up " by filing the grievance on Ballard.

90. Defendant Wardens Bowman and Mitchell have given authorization to security staff to deny prisoners access to medical regardless of them having a pass to access medical and medical appointments; especially if the prisoner is in a wheelchair (where " The Cage " only has space for 1 wheelchair). Thus, the Wardens are personally responsible and liable for inmates being denied access to medical,at the Powldge Unit, and are therefore sued in their individual capacities for monetary damages for the deliberate indifference to plaintiff's serious medical needs,in violation of the Eighth Amendment,where this such authorization resulted in the worsening of plaintiff's condition and the resulting pain and suffering which had no legitimate penological purpose.

### Falsifying Medical Records

91. Dale Wainwright, Bryan Collier, Lorie Davis, Lanette Linthicum, and Owen J. Murry are sued in their Official Capacities for injunctive relief where each promulgated and/or adopted Medical Poilcy designed to create false medical records; in violation of state statues and inviolation of the Eighth Amendment to the Constitution of the United States.

92. Defendants promulgated and/or adopted Correctional Managed Healthcare Policy " I-71.1 " which allows an inmate to refuse medical treatment [or allows medical staff and security to allege the inmate refused treatment], but does not allow the inmate to state why he is refusing treatment from medical/dental/psychiatric services on the refusal form; which is made part of a prisoners' medical files for defense purposes.

93. Correctional Managed Healthcare Policy I-71.1 thereby provides for false or incomplete medical files to be created, where absent the inmate's information as to why treatment was refused the record does not speak the truth (e.g. prisoner refused treatment because his blood-sugar level was 70 mg/dl and injection of insulin would cause him to go into hypoglycemia; prisoner refused treatemnt

because he is wheelchair-dependent and TDCJ denied him transportation via a wheelchir accessible van;
prisoner refused transfer to John Sealy in Galveston where the trip takes 2-10 days and he is currently
under a court deadline to complete a motion/brief, etc...) See Appendix Exhibits 20 and 21.

94. This policy must be changed to allow complete and accurate medical records; reflecting not only
that the prisoner refused treatment, but whether a ligitimate reason for refusing treatment existed.
To do otherwise is to continue to allow false or incomplete records; which prevents proper diagnosis
and treatment. Thus, Correctional Managed Healthcare Policy I-71.1 is deliberately indiffenent to
the serious medical needs of plaintiff and the entire inmate population of TDCJ-ID.

<u>Retaliatory Transfer</u>

95. Defendant Warden Robert D. Harrera is sued in his individual capacity for retaliation against
plaintiff, for plaintiff exercising his rights to free speech and to petition the government for
redress of grievance; which is protected conduct; pursuant to the First Amendment to the Constitution
of the United States.

96. Defendants Bryan Collier and Lorie Davis are sued in their Official Capacity for injunctive relief
as the Executive Director of TDCJ and Director of TDCJ-ID; seeking to enjoin them from further and
future retaliatory transfers of plaintiff and seeking to have plaintiff transferred back to the Pack 1
Unit or Jester III Unit; where plaintiff's medical condition is such that he is not supposed to be
exposed to tempreture extremes and Pack 1 and Jester III are climate controlled. To do otherwise is
to act with deliberate indifference to plaintiff's serious medical needs and exposes him to cruel
and unusual conditions of confinement, in violation of the Eighth Amendment to the Constitution of
the United States.  Defendants are sued in their individual capacities for monetary damages for
authorizing Warden Robert D. Harrera's retaliatory transfer of plaintiff to the Boyd unit; which they
know is over capacity [for wheelchair dependant inmates] and they know was not designed for the
accommodation of wheelchair dependant inmates. [As will be address later in this complaint].

97. Plaintiff was immediately assigned to the Pack 1 Unit of the TDCJ-ID, in Navasota Texas, on
or about 04/05/2018 by the State Classification Committee, due to plaintiff being medically restricted
from exposure to tempreture extremes and due to his being a wheelchair-dependant inmate. See Appendix
Exhibit(s) 23 and 24

98. Plaintiff had began assisting other inmates in filing medical grievances and filing grievances
of his own complaining of inadequate medical care and other conditions of confinement at the Pack 1
Unit, which is protected activity under the First Amendment.

99. On 09/12/2018 plaintiff assisted inmate Ira Goodwin, TDCJ #1765981 with the filing of a grievance
regarding L.V.N. Gwendolynn Crawford changing Ira Goodwin's medical status and taking his wheelchair
from him on 09/10/2018.

100. On 09/12/2018 Goodwin had not been to the chowhall to eat, to the pill-line to get medication,
nor had he been to insulin since his wheelchair had been taken [he said he could not walk down there].
He was diabetic, had heart problems, had a pace-maker, and a defibulator, and had been suffering from

what appeared to be a severe case of cellulitis and at approximately 3:00 pm he passed out while sitting up in bed; fell to the floor; striking his head on the metal partician around his cubicle and then stricking his head on the concrete floor.

101.  ~~On 09/12/2018 Ira Goodwin had not been to eat, had not been to the pill-line to get medication, or to diabetic clinic to receive insulin since his weelchair had been taken and at approximately 3:00 p.m. he passed out, while sitting on his bunk; crashing to the floor and stiking his head on the metal partician around his cubicle and then the concrete floor.~~ *SKB*

102.  Inmate Edward Green yelled for medical assistance; having seen Goodwin collapse.

104.  Medical and Security came to get Goodwin off the floor and put him on a gurney to transport to medical, and Warden Herrera came to the scene to observe.

105.  After medical and security left with Goodwin, Edward Green was talking to me about Goodwin [we were in the dayroom a few feet from the bars and hallway] and Warden Harrera was about 10 feet from us in the hallway (aparently listening to the conversation between Green and plaintiff).

106.  Warden Herrera, spun around to face Green and plaintiff, pointed his finger at plaintiff in a threatening manner; his face contorted in rage; and he screamed, "You !! You need to shut your fucking mouth and stay the hell out of this !! You've been instigating shit around here with all the grievances you're writting and I know what you have been up to and if you don't stop it I'm gonna lock your ass up and ship your ass just like I did Cole !!" [Referring to the plaintiff in Cole V. Collier, whom Warden Herrera had retaliated against, locked in administrative segregation and had transferred in retaliation against him for his continued grievances and litigation.]

107.  Warden Herrera was red faced and was acting like a deranged lunitic during his deranged tirade; in which he was threatening plaintiff for his filing grievances his assisting other inmates, and for his expressing concern over Ira Goodwin; all of which are protected speech.

108.  On 10/19/18 plaintiff met with Scott Medlock,of the Edwards Law Firm; the firm which represented the " Inmate Class " in the " Pack 1 Lawsuit " styled as Cole V. Collier; Cause No. 4:14-CV-01698.

109.  Scott and plaintiff discussed the retaliation had against Cole and Warden Herrerra's threats against me, and we discussed Harrera's and TDCJ/TDCJ-ID's failures to comply with Judge Ellison's ORDERs, harassment and retaliation being taken against the inmate population by Warden Harrera;as a result of The Court's rulings;and we discussed my partial victory in Baughman V. Garcia; Cause No. 4:14-CV-3164; in the Southern District of Texas. Scott and I also discussed the need for a Class Action Lawsuit against TDCJ/UTMB for unconstitutional dental policies (denial of dentures to prisoners) and the need for a Class Action Lawsuit to force treatment of the thousands of prisoners who were suffering with and in many cases dying from Hepatitis-C; due to delay and denial of treatment by TDCJ/UTMB.

110.  Scott Medlock and plaintiff discussed grievances I had assisted others in filing, regarding denial of dentures and denial of hepatitis-c treatment and how plaintiff would continue to do so,until a class action case was filed. Scott suggested plaintiff have the inmates who plaintiff was assisting write to him when the grievance process was completed and no remedy was provided.

111. It was a combination of plaintiff's own grievances and those he had assisted others in drafting which had infuriated Warden Harrera and caused his tirade on 09/12/18.

112. On 11/16/18 [just 28 days after plaintiff's meeting with Scott Medlock] Warden Harrera held true to his threat to retaliate against plaintiff and he had plaintiff transferred from the climate controlled Pack 1 Unit to the Boyd Unit; which was not climate controlled. See Appendix Exhibit 22 (Grievance #2019042495 regarding the retaliatory transfer).

113. Plaintiff's medical conditions indicate he is to be housed in a climate controlled facility and he is not to be exposed to temprature extremes where:

    1). Plaintiff is morbidly obese; weighing over 400 lbs.

    2). Plaintiff is a type II insulin dependant diabetic.

    3). Plaintiff suffers from Stage III Kidney Disease

    4). Plaintiff suffers from Hypertention

    5). Plaintiff has Asthma

    6). Plaintiff suffers from gaul-bladder damage

    7). Plaintiff suffers from multiple other ailments and is wheelchair-dependant.

Plaintiff's ailments and injuries have made it to where plaintiff is heat sensative and all of his heat sensative medical conditions qualify him for being housed only in climate controlled facilities. See Appendix Exhibit(s) 23 (Dkt. #1065, filed 03/27/18, Cole V. Collier; Cause No. 4:14-CV-1698); Exhibit 24 ("Current Patient Restrictions" of Steven Kurt Baughman, dated 12/10/2019) and Exhibit 25 (" letter to Lorie Davis" dated 11/12/2018 just before the retaliation took place).

114. Defendants Bryan Collier, Lorie Davis, and Robert D. Harrera further acted with deliberate indifference to plaintiff's serious medical needs;in violation of the Eighth Amendment to the Constution of the United States;through interferring with treatment once prescribed;by way of transferring the plaintiff to a fecility which was not climate controlled and exposing him to extreme tempretures [heat indexes above 100°F] which caused plaintiff to suffer breathing difficulty and torture from May 2019 through October 2019. Such transfer was contraindicated by plaintiff's medical restrictions and thus was deliberately indifferent to his serious medical needs. See Appendix Exhibits 23 & 24, & 26.

115. Where Defendants Collier, Davis, and Herrara were personally aware of plaintiff's medical restrictions and acted with deliberate indifference to his serious medical needs in transferring plaintiff to the Boyd Unit; which they knew was not climate controlled; they are sued in their individual capacities for monetary damages (compensatory, pauative, and/or presumed and general).

## Denial Of Adequate Shelter

### Boyd Unit

116. Defendants Bryan Collier, Lorie Davis, Cynthia Tilley,and Dale Wainwright are sued in their individual capacities for denying plaintiff adequate shelter at the Boyd Unit of TDCJ-ID,for which plaintiff seeks monetary damages.

117. Defendants Bryan Collier, Lorie Davis, Cynthia Tilley and Dale Wainwright are sued in their

individual capacities along with Defendant Rachell West for denial of adequate shelter in violation of the Eighth Amendment to the Constitution of the United Satates and for discrimination against the physically handicaped in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") for which plaintiff seeks monetary damages.

118. Defendants Bryan Collier, Lorie Davis, and Dale Wainwright are sued in their Official Capacities where plaintiff seeks injunctive relief to enjoin defendants from further and future violations of disabled prisoners' rights to adequate and appropriate shelter at the Boyd Unit, Powledge Unit and all TDCJ-ID Units which currently house disabled prisoners or those intended to house disabled prisoners in the future.

119. A prisoner must be provided with shelter which does not cause his degeneration or threaten his mental or physical well being.

120. One important aspect of shelter is whether it is adequate to the number of prisoners confined in it and;

121. Courts are likely to find crowding unconstitutional where it is linked to breakdowns in classification and may be found where overcrowding results in discrimination against the physically handicapped or disabled prisoner.

122. Such overcrowding existed at the Boyd Unit when Plaintiff was transferred to the Boyd Unit from the Pack 1 Unit on 11/16/2018.

123. The Boyd Unit only had 6 minimum security wheelchair accessible cells for disabled prisoners.

124. However, Defendants Collier, Wainwright, Davis, Tilley, West and the State Classification Committee ("SCC") assigned more than 11 State Approved Trusty Class 3 (SAT3) Custody Level: G-2, minimum security prisoners to the Boyd Unit. See Appendix Exhibit(s) 29 through 36.

125. To deal with the overcrowding of wheelchair-dependant inmates at the Boyd Unit, Defendant Tilley, and Defendant West promulgated a classification scheme whereby they housed 6 wheelchair-dependant disabled prisoners in the 6 minimum security wheelchair accessible cells and they sent 5 disabled wheelchair-dependant inmates to medium security lock-down. See Appendix Exhibits 29 through 36.

126. Every 30 days Defendant Tilley and Defendant West would rotate 3 disabled wheelchir-dependant prisoners from medium security lock-down (wheelchiar accessible/disabled) cells to minimum security K-pod (cells K-113 thru K-118) and randomly select 3 minimum security SAT3/G2 prisoners and move them to medium security lock-down B-pod (cells B-113 thru B-118).

127. Once a prisoner was moved from K-pod to B-pod he was treated as if he was a medium security prisoner and not a minimum security prisoner and this such classification scheme denied disabled prisoners access to programs, services, activities, and/or otherwise subjected them to discrimination, by reason of their disabilities as follows:

  1. Disabled prisoners who were SAT3/G2 minimum security and housed in K-113 through K-118 were punished and sent to medium security lock-down without the issuance of a disciplinary case/infraction and without any form of disciplinary due process and were punished solely

due to their disabilities. [Able-bodied prisoners were not moved from minimum security to medium security lock-down on random 30 day cycles. In-fact able-bodied prisoners were only moved to B-pod if they had received disciplinary infraction and were given a demotion in class and custody status below Line Class 2, and given a G4 custody status, and they were were given a due process disciplinary hearing first.] ~~~~~~~ ~~~~~~~ ~~~~~~~

2. Disabled and wheelchair-dependent prisoners moved to medium security lock-down were not allowed out of their cells at any-time in which Line 3/G4 medium security prisoners were in the dayroom, in the shower, on the phone, being staged for chow, coming back from chow, or being escorted off the cellblock.

3. If a disabled and wheelchair-dependent prisoner managed to find a time in which a Line 3/G4 inmate was not in the dayroom or being moved;and it was not count time,or rack time, and "if"a guard was in the picket and one roving the B-pod floor, the wheelchair-dependent inmate "might" be able to get out of the cell and go to the A-pod dayroom with General Population medium security prisoners. [Violating Texas Government Code § 501.112 through mixing of inmates with differant classifications.]

4. In A-pod there were no handicap accessible toilets, no handicap accessible showers, no handicap accessible tables for wheelchair-dependent inmates to use.

5. Handicapped and wheelchair-dependent inmates were stuck in A-pod for hours and forced to urinate and/or deficate on themselves; where they were denied hourly ingress and egress from A-pod back to their assigned medium security lock-down cell in B-pod.

6. Plaintiff was denied access to programs other minimum security offenders were allowed access to (e.g. Muslim Taleen and Jumah services, access to the Chaplain's Library, could not watch T.V., etc..) when he was moved from K-117 to B-117 on 01/31/2019. See Exhibit 29.

128. Plaintiff was thereby denied access to programs, services, activities, and/or was otherwise subjected to discrimination, by reason of his disability,at the Boyd Unit,where from his reception at the Boyd Unit from Pack 1 Unit on 11/16/2018 plaintiff was subjected to the following:

1. Boyd Unit officers, employees, and/or administrative officials engaged in harassment and discrimination against plaintiff and other disabled and wheelchair-dependent prisoners;

2. Plaintiff was denied access to handicap accessible toilets in the dayrooms where:

a). There were no hand-rails around the toilets to assist in transferring from a wheel-chair to the toilet;

b). There was a PREA Curtain in a metal frame bolted to the floor in front of the dayroom toiltes in such a fashion,and in such a place,that prevented wheelchairs from accessing the dayroom toilets;

c). There were no cleaning materials with which to sanitize the toilet-rim/seat; where the able-bodied inmates had urinated, spit, etc.., and upon which the wheelchair-dependent inmate must transfer his bare-butt to,"if"he were able to get to the toilet;

d). Security did not run ingress and egress every hour and wheelchair dependant inmates

were left in the dayrooms for up to 6 hours without access to a toilet.

e). Security would not allow wheelchair-dependent inmates into their cells to use the restroom. See Appendix Exhibit 30 where Defendant Michael A Buchanan denied plaintiff access to the restroom on 12/02/2018 and stated to another inmate within hearing of plaintiff, " let him piss on him-self or in the trash-can for all I care." [His acts and statements constituting deliberate indifference, in violation of the Eighth Amendment and violating Title II of the ADA and/or Section 504 of the RA.]

3. Plaintiff and other disabled and wheelchair-dependent prisoners were denied access to a cold-water shower to cool off during the summer months; although cool-down showers were available to able-bodied prisoners. Such denial of access to cold-water showers constituted an Eighth Amendment violation,under Cole V. Collier, Cause No. 4:14-CV-01698, and a violation of Judge Ellison's Orders, as well as being violative of Title II of the ADA and/or Section 504 of the RA.

4. Plaintiff and other wheelchair-dependent prisoners were harassed and discriminated against when going to medical or the pill-line,where they were forced to take long circuitous route around the compound and up a steep incline to get to the pill-line or medical from the chowhall; when the sidewalk from the chowhall to medical was less than 10 yards in distance from each other. Security staff would taunt wheelchair -dependent inmates when ordering them to take the long-way to medical or the pill-line saying," if you don't like it you should not have come to prison." [Warden Tilley, Warden Jackson and administrative security officials condoned such acts and stated it was their jobs to punish offenders.Thus, condoning cruel and unusual punishment.]

5. Warden Tilley authorized security to place barrels on the sidewalks(obsticles) and order wheelchair-dependent prisoners to go around them;making lanes similar to emergency lanes on a highway; and forcing wheelchair-dependent inmates dangerously close to the drop-off at the edge of the sidewalk. There were no safety rails to prevent wheelchairs from running off the edge and wheelchir-dependent inmates would run off the edge, overturning their wheelchirs and causing injury to the inmates. Inmate James Brewer ran off the edge on 01/16/2019 and received a concussion from doing so.

6. Warden Tilley authorized security staff to issue able-bodied prisoners disciplinary cases for assisting wheelchair-dependent inmates with mobility; if the inmates were seen pushing a wheelchair-dependent inmate's wheelchair; even though it was an excess of 150 yards from K-pod uphill to the chowhall. [The Unit sidewalks were not covered and Security Staff would write disciplinary cases even for assisting wheelchair-dependnet inmates to get from K-pod or B-pod to the chowhall in the rain or when it was below 20°F and the disabled prisoners' hands were cold and unable to wheel their chair without pain of difficulty.[ See Appendix Exhibit(s) 33-36 Affidavits of Steven Kurt Baughman, James Brewer, Poliocarpio

Madrid and Michael Wooten.

129. Plaintiff is a qualified individual under the ADA and/or RA where he is: a insulin dependent type II diabetic; disabled and wheelchair-dependent due to accident and injury to his back, knees, ankles and has a degenerative spinal condition and congenital spinal defects; he has Stage III Kidney disease; and he has urinary incontenence caused by a bladder condition and diabetes.

130. Where plaintiff is a qualified individual under the ADA/RA and he was precluded from participating in programs, services, or activities, or was otherwise subjected to discrimination, by reason of his disability the defendants violated Title II of ADA / Section 504 of RA in conducting the aforementioned acts/actions or omissions at the Boyd Unit.

131. Where Defendants Wainwright, Collier, Davis, Tilley, West, and Buchanan acted with deliberate indifference to the rights of plaintiff, in denying him adequate shelter and accommodations for his disibilities, each acted personally and in their individual capacities to violate the rights secured to plaintiff through the Eighth Amendment to the Constitution of the United States; especially where the defendants intentionally overcrowded the Boyd Unit with disabled and wheelchair-dependent inmates and then subjected them to cruel and unusual punishment, by reason of their disabilities; as described in the foregoing paragraphs.

132.                                    Retaliation

132. On 12/03/2018 plaintiff filed a grievance against Tabitha Robinson (Law Library Supervisor of the Boyd Unit) and her assistant Jessica Gatson for confiscation of legal notes, pleadings, and case law for active litigation in the United States District Court for the Southern District Of Texas in the case of Baughman V. Garcia; Cause No. 4:14-CV-3164; and Baughman V. Harris County; Cause No.4:18-CV-0960. See Appendix Exhibit 37 "Grievance #2019064314"

133. On 12/21/2018 Defendant Shannon Shannon, while relieving another officer on K-pod, at approximately 09:35 hours, was approached by plaintiff who informed Defendant Shannon that he needed to be let into his cell to use the restroom.

134. Defendant Shannon refused to allow plaintiff into his cell to use the restroom and told him to use the toilet in the dayroom.

135. Plaintiff explained to Defendant Shannon that the dayroom toilet was not handicap and wheelchair accessible and told her he had just finished filing a grievance on Defendant Buchanan for denying plaintiff access to the toilet in his cell. Plaintiff went on to tell her he had medical issues which caused him to frequently urinate and that he needed in his cell to do so. [Plaintiff did not wish to explain to a female guard that his diabetes also caused erectile disfunction and that in conjunction with his obesity and disabilities made it to where he could not stand and urinate but had to sit on the toilet to do so. Rather embarassing to have to explain to anyone.]

136. Plaintiff went on to say that as a law library officer she should be well aware of the fact that denying a prisoner access to a toilet, by reason of his disabilities violated common law, statutory law, and constitutional law and that if plaintiff had to call the Inmate Assistance League and have

Linda Pugh call the Warden and Regional Director to get him into his cell; like he had to do with Defendant Buchanan a couple of weeks prior, he would do so.

137. Defendant Shannon still refused to allow plaintiff access to the toilet in his cell.

138. Plaintiff proceeded to go to the phone to call Linda Pugh, and defendant Shannon asked what he was doing and plaintiff told her he was making the call to get into his cell to use the restroom.

139. Seeing plaintiff was serious Defendant Shannon got mad and stormed over to the intercom and told the officer working in the picket to open K-117 to let plaintiff into his cell to use the restroom.

140. As soon as plaintiff got into his cell Defendant Shannon slammed the door shut.

141. On 01/09/2019 (19 days later) plaintiff was in the law library for the 12:00-14:00 hour session and around 14:00 hours plaintiff needed to use the restroom.

142. Defendant(s) Shannon and Gatson were the law library supervisors that day and plaintiff approached Defendant Shannon and told her he needed to go to the restroom and she denied plaintiff permission to go to the restroom, stating they gave a restroom break at 11:30 hours before the session started and it was their policy not to allow anyone to go to the restroom after the 12:00 hour session started; but plaintiff again explained to her that he had diabetes, kidney disease and a bladder condition which caused frequent need to urinate and urinary incontenance.

143. Still Defendant Shannon refused to allow plaintiff to go to the restroom, acting with deliberate indifference to his need [claiming it was Access To Courts Policy and Unit Policy to do so].

144. Plaintiff ended up urinating on himslef and told Defendant Shannon that he had done so and now needed a Step 1 Grievance, so he could file about being denied access to the restroom and being made to urinate on himslef.

145. Defendant Gatson then interrupted and told plaintiff to sign-out from the law library "sign-in log" and for him to go on to the restroom, and when he was through to remain in the hallway until count cleared.

146. Defendant(s) Shannon and Gatson conspired to retaliate against plaintiff for stating he was going to file a Grievance on Shannon for denying plaintiff access to the restroom; which denial had resulted in plaintiff urinating on himslef. The retaliation was also due to plaintiff having already filed a grievance about Defendant Gatson and Tabitha Robinson wrongfully confiscating plaintiff legal materials and for his writing Warden Tilley about it. See Appendix Exhibit(s) 37.

147. The retaliation was taken in the form of Defendant Shannon and Gatson filing Disciplinary Case #20190117771 and incident reports/witness statement alleging a Code 41.0 Violation of TDCJ Inmate Disciplinary Rules for Creating Unnecessary Noise; "in that he began to talk loudly in the law library during study time." See Appendix Exhibit 38 The Disciplinary Hearing receipt given to plaintiff.

148. "But For," plaintiff telling Defendant Shannon he needed a Step 1 Grievance to file with regard to being denied access to the restroom he would not have been issued a disciplinary case; this is the retaliatory motive which prompted the writing of the disciplinary case as plaintiff's request

to go to the restroom and his telling Defendant Shannon he was going to file a grievance were the only times plaintiff spoke, from the time he entered the law library at 12:00 hours. See Appendix Exhibit(s) 39 and 40 "Grievance #2019066573 and the Witness Affidavit of Offender Jerry Anderson, TDCJ # 1764608.

149.  Defendant Lieutenatn Christopher Johnson acted as the disciplinary hearing officer, on 01/15/2019 at 23:40 hours.

150.  Plaintiff told Defendant Johnson that the disciplinary case had been written in retaliation of plaintiff telling Defendant Shannon that he needed a Step 1 Grievance to file agianst her for denying him access to the restroom.

151.  Defendant Johnson found that the written statements of Defendant Shannon and Gatson were sufficient to establish a finding of guilt and assessed punishment at a verbal reprimand. See Appendix Exhibit 37; while noting that even Defendant Johnson stated on the disciplinary report plaintiff told him he was denied access to the restroom by Defendant Shannon.

152.  Plaintiff filed an Disciplinary Appeal, due to the fact the disciplinary case had been written as retaliation for protected speech and the right to petition for redress of grievances.

153.  The reviewing authority did not pay any attention to the fact the case was a retaliatory disciplinary case and merely cited the usual response," No procedural errors noted...there was sufficient evidence to sustain a finding of guilt.;;the punishment was within established guidelines..." See Appendix Exhibit 39 "Grievance #2019066573."

154.  On 01/22/2019 Plaintiff obtained the witness affidavit of Jerry Anderson TDCJ # 1764608, who can be verified as being in the law library on 01/09/2019 when the incident took place; through the law library sign-in log. See Appendix Exhibit 40 "Affidavit of Jerry Anderson."

155.  Where Defendants Shannon and Gatson retaliated against plaintiff for telling defendants he was filing a grievance against them for denying him access to the toilet, which resulted in his urinating on himslef, such retaliation for exercising free speech and right to petition the government for redress of grievances constitutes a violation of the First Amendment to the United States Constitution; for which plaintiff seeks monetary damages.

156.  Where Defendants Shannon and Gaston denied plaintiff access to the restroom, which resulted in plaintiff urinating on himslef, Defendants denied plaintiff one of life's necessaties and acted with deliberate indifference in violation of the Eighth Amendment to the Constitution of the United States; for which plaintiff seeks monetary damages against each in their individual capacities.

157.  Where Defendants Shannon and Gatson knew plaintiff was disabled and had medical conditions which caused and necessitated frequent urination and caused urinary incontenance, they acted with deliberate indifference in denying him access to the toilet and violated Title II of the ADA / Section 504 of the RA, where such denial constituted denial of access to programs, services, or activities, or otherwise subjected him to discrimination, by reason of his disabilities / denied reasonable accommodation for his disabilities; for which palintiff sues defendants in their individual

capacities and seeks monetary damages.

159. Where Defendants Shannon and Gaston claim it's Access To Courts Policy to deny inmates access to the restroom during a law library session plaintiff sues Defendants Dale Wainwright, Bryan Collier, and Lorie Davis in their individual capacities for promulgating/adopting unconstitutional policies which deny inmates one of life's necessities; in violation of the Eighth Amendment;and where plaintiff is disabled [diabetes, bladder condition, and kidney disease] such denial constitutes a violation of Title II of the ADA/Section 504 of the RA, for which plaintiff seeks monetary damages; plaintiff further sues defendants in their official capacity for injuctive relief in the form of promulgating written Access To Courts Policy to allow inmates to use the restroom [as needed] during law library sessions.

<u>Violation Of Disciplinary Due Process</u>

160. Plaintiff sues Defendant Vernon Mitchell and defendant Captain Johnathan Teaff in their individual capacities for violation of due process in disciplinary proceedings, in violation of the Fourteenth Amendment , for which plaintiff seeks monetary damages.

161. On or about 08/15/2019 plaintiff mailed a I-60 to Defendant Mitchell, Defendant Tanner, and to Defendant Ferrell regarding C.O.III Krystal Poe continually wipping her nose with her hands and the braces she wears on her wrists and then handles inmates food and I.D. Cards without washing her hands or the braces [its habitual like someone snorting cocaine or doing codine] and she had developed a bi-polar attitude and was causing confrontations with inmates in the chow hall.

162. On 08/20/2019 Defendant Poe was working A-serving-line in the chow hall.

163. The kitchen was serving pork-roll for main course and with plaintiff being Muslim he is forbidden from eating pork, so he requested the non-pork protein substitute and was given peanut butter and jelly (" PB&J ").

164. Where the kitchen was serving corn bread to go with the pork roll and it does not go with PB&J plaintiff asked for a couple of slices of wheat bread and was told he would have to go over to " the diet line side " A-line to get the bread.

165. Plaintiff wheeled over to A-line and requested a couple of slices of bread and just as the inmate was putting it on plaintiff's tray Defendant Poe shouted, "Don't give him any bread. I don't care if he's Muslim or how many grievances he files."

166. Plaintiff backed his wheelchair out from the end of the line and as he turned around to go to a table plaintiff's sleeve got caught in the push-bar of his chair and he spilled and dropped his tray.

167. After dropping his tray plaintiff exited the chow hall without requesting a replacement.

168. Defendant Poe after denying plaintiff 2 slices of bread to go with plaintiff's PB&J and having seen plaintiff drop his tray ordered C.O.III Bentley to issue plaintiff a disciplinary case for allegedly " Creating A Disturbance," Disciplinary Code 23 [used as a catch all at the Powledge Unit].

169. C.O.III P.Bentley did not stop plaintiff or ask for his I.D. even though the exit from the chow hall was locked and plaintiff had to wait in a long line for about 5-10 minutes before Sgt. Attwood opened the door to allow traffic to egress the chow hall and return to their assigned areas.

170. On 08/30/2019 G. Smith, Counsel Substitute, served plaintiff with Disciplinary Case No. 20190318182 at 17:10 hours.  See Appendix Exhibit 41,Receipt of Disciplinary Report and Hearing #20190318182.

171. Disciplinary Case No. 20190318182 alleged that on 08/29/2019,at " 10:20 AM,and at B2 Chow Hall, Offender: Baughman, Steven Kurt, TDCJ-ID No. 02180609, Did throw his tray accross the Chow Hall which resulted in a significant disruption of operations in that such act caused the chow hall to be stopped."

172. Plaintiff told G.Smith to acquire the chow hall register/scanner  logs/receipts for A-line and B-line,from 10:15 - 10:30 hours,to refute the allegations; where the chow hall was not stopped and the serving lines continued running. The logs would show this and prove there was no disturbance created by the plaintiff; exculpatory documentary/electronic evidence proving innocense of the charge.

173. In order for an inmate to be served chow he must scan his I.D. Card to be served. This scan is read by the serving-line officer who views a computer screen as the I.D.Card is scanned. This scan tells what typre of diet the inmate is on, and registers the date and time the inmate came through the serving line to receive his tray and whether he had previously been through A or B line.

174. On 09/06/2019 Defendant Johnathan Teaff, Captain, heard the disciplinary case #20190318182.

175. G.Smith did not gather the exculpatory evidence; as can be heard on the disciplinary hearing tape and Defendant Teaff refused to allow further recess to acquire the documentary evidence.

176. Where the documentary evidence was not provided to refute the disciplinary allegation,plaintiff requested that Offender Marcus Glenn, TDCJ-ID No. 01739995 [a chow hall worker who was witness to plaintiff dropping his tray and the one who picked the tray up for plaintiff and swept up what plaintiff had spilled] and Scott [The Barber, who was behind plaintiff in the chow line] be called as witnesses.

177. Defendant Teaff refused to allow the witness testimony that contradicted the allegations of C.O.III Bentley and Defendant Poe. Disciplinary Hearing Record and Recording will need to be produced as evidence.

178. Defendant Teaff found plaintiff guilty as charged and assessed punishment at:Demotion in time earing class from SAT3 to SAT4; 60 days loss of commissary privileges, and 45 days cell restriction. See Appendix Exhibit 41 "Disciplinary Report and Hearing Record".

179. After the hearing plaintiff received the written disposition signed by Defendant Teaff, but his reasoning for refusing witnesses and reasoning for finding of guilt cannot be read. See Appendix Exhibit 41 "Disciplinary Report and Hearing Record."

180. Pursuant to prison procedure, plaintiff filed administrative appeal [Grievance Step 1] with Defendant Mitchell; stating plaintiff's rights to disciplinary due process had been violated in the hearing of Disciplinary Case No. 20190318182 where:
   1. Plaintiff was denied an unbiased hearing officer;
   2. Plaintiff was denied exculpatory documentary evidence;
   3. Plaintiff was denied witness testimony of Marcus Glenn and Scott "The Barber;
   4. The disciplinary charge, Code 23, was overly broad and unconstitutionally vague in its definition and failed to put officers or inmates on notice as to exactly what constitutes "Creating A Disturbance," and it is used as a catch-all similar to the old charge of wreckless-eye-balling which was found to be unconstitutional, where it is used for anything

and everything from an inmate standing in the dayroom in his boxer-shorts, to talking quietly in the hallway, to merely spilling a tray is termed "Creating A Disturbance; depending on the officer and what ever they want to do.

181. Defendant Mitchell denied the disciplinary appeal. See Appendix Exhibit 42 "Grievance #2020003672."

182. Purtsuant to prison policy and procedure, plaintiff filed a Step 2 Appeal with B. Barrett.

183. B. Barrett denied the Step 2 appeal. See Appendix Exhibit 42 "Grievance #2020003672.

### Retaliation And Violation of Disciplinary Due Process

184. Plaintiff sues Defendant krystal Poe, Leiutenant Ronnie Stanhope, and Assistant Warden Vernon Mitchell in their individual capacities for retaliation against plaintiff for exercising free speech and his right to petition the government for redress of grievances, for which he seeks monetary damages.

185. Plaintiff sues Defendant Krystal Poe, Lieutenant Ronnie Stanhope, and Assistant Warden Vernon Mitchell in their individual capacities for denial of due process in a prison disciplinary hearing, and for finding plaintiff guilty of a violation for which inmates have had no written or posted notice; thereby violating plaintiff's right to Due Process under the Fourteenth Amendment, for which plaintiff seeks monetary damages against each in their individual capacities.

186. Plaintiff sues Defendants K.T.Farrell, Nina Tanner, Assistant Warden Vernon Mitchell, Warden Jimmy Bowman and Lieutenant Ronnie Stanhope in their official capacities for injunctive relief, to enjoin defendants from further and future acts of retaliation against plaintiff arising from the instant action or through future retaliatory disciplinary actions.

187. On or about 08/15/2019 plaintiff filed complaints against Defendant Poe regarding her habitual wipping of her nose with her hands and the braces on her wrists [this went on every few minutes for months]. See paragraph 161 above.

188. On 09/13/2019 plaintiff received Step 1 Grievance #2020005686 which alleged violations of Food Service Policy through:

1. Improper and unsanitary handling of food by Defendant Krystal Poe who habitually wipped her nose with her hands and the braces on her wrists [like someone snorting cocaine or doing a lot of codine] and then handling inmate's ID Cards and food without washing her hands and the braces on her wrists she'd wiped her nose with; such unsanitary handling of food being an Eighth Amendment violation;

2. Where plaintiff is a Muslim such unsanitary handling of food made the food haram (unlawful to eat) and violated plaintiff's First Amendment rights to freely practice his religious beliefs and thus also violated the Religious Land Use of Institutionalized Persons Act (RLUIPA).

3. Where the inmates serving the food are not made to wear hair-nets, beard-nets, and serving gloves the serving practices of the Powledge Unit are unsanitary.

189. Grievance #2020005686 further complained of religious discrimination by Defendant Nina Tanner who continually feeds PB&J as a non-pork substitute protein without rotating between cheese, boiled eggs, sliced meat and peanut butter [not PB&J] as dictated in the settlement agreements had with TDCJ-ID in Brown V. Livingston and Muzzadeha V. TDCJ; but Defendant Tanner does rotate protein substitutes

~~for the non-religious "Heart Healthy Diets;" thereby, Defendant Tanner discriminates against Jews, Messionic Jews, and Muslims where it comes to non-pork protein substitutes. See Appendix Exhibit 47. ¶7.~~

~~190.   Discrimination against plaintiff and Jewish and Muslim inmates based on their religious beliefs and the dietary requirements of their religion constitutes a violation of the First Amendment and/or a violation of the RLUIPA statutes; for which plaintiff sues Defendant Tanner in her official capacity for injunctive relief to enjoin her from further and future acts of discrimination and to enjoin her from further breaches of the settlement agreements regarding religious diets.~~

~~191.   On 09/28/2019, at 17:15 hours, Food Service Sgt. Fisher and Defendant Tanner fed pork breakfast casserole to Jews and Muslim inmates including plaintiff, without prior notification that the meal contained pork. See Appendix Exhibit 48 "Grievance #2020017765."~~

~~192.   Food Service is to post a menu board in the chow hall each day and if a menu item contains pork or a pork by-product the word "Pork" is to appear beofe or after that menu item and/or there is to be a star/astrik ("*") beside the item.~~

~~193.   On 09/28/2019, at 17:15 hours, no such menu with the word pork or an estrick/star was posted the menu only stated "breakfast casserole."~~

~~194.   Even after Food Service sgt. Fisher was advised by the butcher and cook that the meal contained pork she did not post on the menu, or on the sneeze guard of the serving line the word "Pork" nor a star/astrik, nor did she inform all the inmates coming through the line that the meal contained pork.~~

~~195.   Defendant Tanner and Sgt. Fisher as Food Service Manager and Shift Supervisor were personally responsible for feeding Muslims (including plaintiff) and Jews pork on 09/28/2019 in violation of Muslim Halal and Jewish Kosher dietary requirements; thus Defendants Tanner and Fisher were responsible for violating plaintiff's right to freely practice his religious beliefs in violation of the First Amendment and in violation of the RLUIPA statutes. See Appendix Exhibit 48 "Grievance #2020017765."~~

~~196.   Plaintiff sues Defendant Tanner and Fisher in their individual capacities for denial of the right to freely practice religious beliefs, for which plaintiff seeks monetary damages.~~

~~197.   Plaintiff sues Defendant Tanner, Warden Bowman, Warden Mitchell in their Offical capacities for injunctive relief, seeking to enjoin them from further and future acts and/or ommissions of violating plaintiff's rights to freely practice his religious beliefs through feeding him pork in violation of the First Amendment and in violation of the RLUIPA statutes.~~

198.   On 09/30/2019 plaintiff spoke to the Unit Grievance Investigator about Defendant Poe continually wipping her nose with her hands and the braces on her wrists [like someone snoting cocaine or doing codine] and then handling food without washing her hands, and mentioned the fact Poe had been taken out by ambulance on 08/14/2019, at about 10:00 hours [while plaintiff was waiting on transport in the showerroom he observed this] and he mentioned the fact Defendant Poe was having a lot of confrontations with inmates and was acting bi-polar; indicating possible drug use.

199.   The Grievance officer said she would enter the chow hall un-announced and observe Defendant Poe.

200. On 10/12/2019 a few days after talking to the grievance investigator the kitchen was serving pork sloppy joe for lunch and Defendant Poe denied plaintiff equal rights, privileges, and immunities to other inmates; where she was serving beef chili mac as an extra serving; which were left-overs (" serve-out ") from Friday-evening chow, 10/11/2019.

201. Plaintiff was forced to enter the A-serving-line (diet -line side) which was serving pork sloppy joe; which is Haram (forbidden) for Muslims to eat.

202. Plaintiff did not get the usual PB&J being served as a pork substitute; he got the vegetables and as he was exiting the serving line he saw the inmate infront of him go to B-serving line and get a serving of beef chili mac to go with his pork sloppy joe.

203. Plaintiff saw Defendant Poe at the B-serving-line and he went to the end of the serving line and ask Defendant Poe if he could have some of the beef chili mac and Defendant Poe shouted for plaintiff to get away from the end of the serving line and told him he could not have any beef chili mac.

204. Defendant Poe knew plaintiff was Muslim and could not eat the pork sloppy joe and she saw that all that was on plaintiff's tray was vegetables, but she denied the beef chili mac to plaintiff.

205. Plaintiff exited the end of B-serving-line as ordered and went to Officer Salazar who was working as chow hall security and requested that Officer Salazar call the kitchen supervisor to the chow hall so plaintiff could speak to the supervisor.

206. Officer Salazar asked what plaintiff wanted to speak to the supervisor about and plaintiff told him that plaintiff was a Muslim and could not eat pork sloppy joe, but Poe was serving left-over beef chili mac and that plaintiff had requested some of it and Poe refused to let him have it; even-though she was giving it to everyone else.

207. Defendant Poe saw plaintiff talking to Officer Salazar and heard plaintiff request to speak to her supervisor and immediately yelled at Officer Salazar and ordered him to get "his [plaintiff's] I.D. and write him up for being out of place."

208. Officer Salazar told Defendant Poe that she should not be serving something on her line that was not being served on the other line and that she did not holler about writing plaintiff up or wanting his I.D. until she heard plaintiff ask to speak to a supervisor about being treated unfairly.

209. Officer Salazar said he would not retaliate against plaintiff for her and that he was calling the supervisor.

210. Food Service Sgt. Urbina was the supervisor on duty and Officer Salazar got on his radio and called for Sgt. Urbina to come to the chow hall, but Urbina did not respond to Officer Salazar's call for assistance.

211. Officer Salazar told plaintiff to eat his beans and vegetables and when he finished for plaintiff to go to the searcher's desk and get a grievance and file it.

212. Plaintiff did as instructed and plaintiff talked to Defendant Stanhope about what happened; as Defendant Stanhope was standing by the searcher's desk when plaintiff exited the chow hall.

213. Defendant Stanhope told plaintiff not to worry about it, that if Defendant Poe wrote plaintiff up

that the "write-up" would have to come accross his desk; but he suggested that plaintiff speak to Defendant Tanner about the "write-up" where it was really a kitchen issue and she could pull the "write-up."

214. On 10/14/2019 plaintiff was called to Defendant Tanner's Office, in the kitchen, to speak to Defendant Tanner.

215. Defendant Tanner was upset because plaintiff had written Laundry and Food Service Headquarters in Huntsville about Defendant Poe, the improper and unsanitary handling of food, and her not rotating the non-pork protein substitutes,and constantly feeding Muslims and Jews nothing but PB&J.

216. Defendant Tanner stated she had received an e-mail from Huntsville about the letters/I-60(s) that plaintiff had mailed to headquarters and demanded to know what I thought I was doing accusing "Officer Poe of constantly wipping her nose with her hands and braces like someone who had been snorting cocaine or doing codine."

217. Defendant Tanner went on to say, "you don't know Officer Poe, or anything about her. As for her doing drugs; don't you know they drug test us ?"

218. Defendant Tanner tried to justify Poe wipping her nose continuously and not washing her hand before handling inmates' I.D. Cards and food saying, "the hyper-cal-snacks she uses tongs to hand the sandwiches to inmate and your bedtime snack is handed to you in a papar sandwich-bag, so there is no sanitary problem there."

219. Palintiff asked the Defendant if he went to the restroom and wiped his butt,and got feces on his hands,and didn't wash them,and picked up a bedtime snack,and handed it to her,if it would be sanitary enough that she would eat it ? There is no difference between Poe and the unsanitary conditions described by plaitiff.  Both situations would violate food handling standards.

220. Plaintiff told Defendant Tanner about the incident on 09/28/2019 where he was fed pork without *his knowing* it until he had eaten part of the breakfast casserole,and that other Muslims and Jews who this had been done to filed grievances about it.

221. Plaitiff discussed the denial of the beef chili mac with Defendant Tanner and told her that Poe was trying to write plaintiff up in retaliation for his requesting to speak to a supervisor.

222. Plaintiff told the Defendant that Defendant Stanhope had told him that,where the issue was a kitchen problem,Defendant Tanner could pull the write-up,or prevent it from being written.

223. Defendant Tanner said she would speak with Defendant Poe when she came back to work on Wednesday, 10/16/2019.

224. Where Officer Salazar refused to retaliate against plaintiff on Defendant Poe's behalf Defendant Poe wrote plaintiff up herself; even though there is no posted or written rule against an inmate coming from one serving line and making a request from an officer on the other serving-line.

225. On 10/17/2019,at 7:20 hours,[the day after Defendant Poe returned to work;and 3 days after plaintiff's meeting with Defendant Tanner] plaintiff was served with Disciplinary Report #2020036036. See Appendix Exhibit 45 " Disciplinary Report and Hearing Record #2020036036."

226. Disciplinary Case No. 20200036036 alleged, "On the date and time listed above, and at B2 Dinning Hall, Offender: Baughman, Steven Kurt, TDCJ-ID No. 02180609, was in B-line after receiving his tray in chow line A, when in fact said offender had no authorization to be in such place."

227. On 10/20/2019, at 11:15 hours, Defendant Lieutenant Ronnie Stanhope conducted the Disciplinary Hearing of case No. 20200036036.

228. Pursuant to minor disciplinary hearing procedures of TDCJ-ID plaintiff was not allowed to call witnesses, but was allowed to submit a written statement of his own into the record.

229. Defendant Ronnie Stanhope found plaintiff guilty, as charged, and assessed punishment at 15 days of Commissary Restriction, without written reason for the finding of guilt.

230. After the hearing, plaintiff received a written disposition signed by Defendant Stanhope. See Appendix Exhibit 45 "Disciplinary Report and Hearing Record of Case No. 20200036036."

231. Pursuant to prison procedure, plaintiff filed an administrative appeal, Grievance Step 1 #2020024944, on 10/21/2019. See Appendix Exhibit 46 "Grievance Step 1 #2020024944; Carbon Copy of plaintiff's written statement for Disciplinary case No. 20200036036, and the Original receipt of the Disciplinary Report and Hearing Record."

232. Administrative Appeal #2020024944 pointed out the following violations:

1. The disciplinary case was issued in retaliation for plaintiff exercising protected speech; "but for" plaintiff requesting to speak to a supervisor to report misconduct of Defendant Poe plaintiff would not have been given a disciplinary case; another motivating factor in the issuance of the disciplinary case was plaintiff's grievance about Defendant Poe's improper and unsanitary handling of food; thereby the disciplinary case was premised on retaliation in violation of the First and/or Fourteenth Amendments.

2. Plaintiff was rightfully in the chow hall and there is no written or posted rule prohibiting the actions taken by plaintiff. Where plaintiff was not given notice of any such rule; where none existed; the failure to promulgate a rule and post notice of the rule was a due process violation ; where an inmate is entitled to prior notice, or fair warning of proscribed conduct before a sanction may be imposed, where the court must assume that a man is free to steer between lawful and unlawful conduct; and it must insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited; thereby the issuance of the disciplinary case violated plaintiffs right to due process under the Fourteenth Amendment.

3. The TDCJ-ID Inmate Oreintation Handbook, section III.D.8. states, "Offenders who are not satisfied with the food may talk to the officer on duty." Which is what plaintiff did when he requested a serving of beef chili mac from Defendant Poe. Thus, plaintiff complied with TDCJ-ID Policy, and "but for " the retaliatory motive plaintiff would not have been issued a disciplinary case and punished. Thereby defendants Mitchell, Poe, and Stanhope committed retaliation against plaintiff in violation of the First and Fourteenth Amendments.

See Appendix Exhibit 46 "Step 1 & 2 Grievance/Appeal of Disciplinary Case No. 20200036036."

233. On 11/13/2019, Defendant Warden Jimmy Bowman overturned disciplinary case No. 20200036036; pursuant to the Administrative Appeal. See Exhibit #46.

234. Defendant Warden Jimmy Bowman spoke to plaintiff on 11/13/2019, and he told plaintiff he was giving him the benefit of the doubt and having the case dismissed and cleared form plaintiff's records; while warning plaintiff that if a single guard told him that plaintiff had been braging about his dismissing the disciplinary case there would be hell to pay.

235. Due to Defendant Bowman's warning, plaintiff seeks injunctive relief against the defendant in his official capacity, enjoining defendant from further and future acts of retaliation, for plaintiff filing the instant litigation.

RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendant(s) Baker, Hidalgo, Gonzalez, Collier, Davis, Hirsch, Stoker, Sizemore, Linthicum, Murray, and D.D.S. "JOHN DOE" acts/actions in delaying and denying plaintiff adequate dental care violated and continues to violate plaintiff's rights under the Eighth Amendment to the Constitution of the United States.

2. Defendant(s) Wainwright, Collier, Davis, Linthicum, Murray and Hirsch's actions in promulgating and adopting the current dental policy' which delayed and denied the provision of adequate dental care to plaintiff for over 12 months; after his reception by TDCJ-ID from Harris County violated plaintiff's rights under the Eighth Amendment to the United States Constitution.

3. Defendants Wainwright, Collier, Davis, Tilley, West, and Bowman's actions in denying disabled and wheelchair-dependent prisoners adequate shelter, as described in the foregoing complaint and in failing to make adequate accommodations for disabled offenders, violated plaintiff's rights under the Eighth Amendment to the Constitution of the United States and violated Title II of the ADA/ Section 504 of the RA.

4. Defendants Wainwright, Collier, Davis, Tilley, Shannon, Gatson, and Buchanan's actions in denying plaintiff access to a toilet and causing plaintiff to urinate on himslef and remain in urine soaked clothing for hours denied plaintiff life's necessities in violation of the Eighth Amendment to the Constitution of the United States and violated Title II of the ADA/ Section 504 of the RA.

5. Defendants Shannon and Gatson's actions in filing disciplinary charges against plaintiff for his requesting to use the restroom and telling Shannon he was filing a grievance for her denying him access to the restroom, constituted retaliation against plaintiff for exercising protected speech in violation of rights secured to plaintiff through the First Amendment to the Constitution of the United States.

6. Defendant Johnson's actions in conducting the disciplinary case #20190117771 and Defendant

44.

Defendant Tilley's actions in sustaining it, violated plaintiff's rights to remain free from retaliation for exercising free speech, violating plaintiff's rights under the First Amendment and/or violated plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

7. Defendant Poe in filing disciplinary case number 20200036036; due to plaintiff requesting to speak to a supervisor and in retaliation of plaintiff filing grievance directed at defendant Poe's misconduct; constituted retaliation against plaintiff for exercising protected speech, in violation of the First Amendment, and where there was no notice given to indicate plaintiff's acts/actions violated prison rules or policies the issuance of the disciplinary case violated the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

8. Defendant Stanhope's actions in conducting the disciplinary hearing of case #20200036036 violated plaintiff's rights to remain free from retaliation for exercising protected speech in violation of the First Amendment and violated plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the Constitution of The United States.

9. Defendant Teaff's actions in hearing disciplinary case #20190318182, and defendant Mitchell's actions in sustaining it violated plaintiff's rights to disciplinary due process under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

10. Defendants Wainwright, Collier, and Davis' actions in promulgating/adopting disciplinary code 23 "Creating A Disturbance," defined the offense in such a manner as to make it overly broad and constitutionally vague in its terms, thereby failing to place officers and prisoners on notice as to what acts/actions constitute a violation; especially where the term "significant disruption" is not defined and is used as a catch all like wreckless eye-balling; thereby violating plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in the processing of disciplinary case #20190318182.

11. Defendants Poe, Reeves, Ellis, and Ballard's actions in denying plaintiff access to medical care for serious medical need (cellulitis) constituted deliberate indifference to serious medical need in violation of the Eighth Amendment to the Constitution of the United States.

B. Issue injunction ordering Defendants Wainwright, Collier, Davis, Hirsch, Linthicum, Murray, Hidalgo, Baker, and Gonzalez; their successors in office, or agents to:

1. Immediately arrange for plaintiff's dental treatment to be performed by a qualified outside dentist (e.g. Ronald J. Cook. D.D.S. who has done the treatment plan for plaintiff on 03/30/2109).

2. Carry-out without delay all dental restoration prescribed by Ronald J. Cook. DDS on 03/30/2019.

C. Award Nominal damages for constitutional violations without physical injury.

D. Award compensatory damages jointly and severly against:

1. Defendants Hidalgo, Baker, Gonzalez for breach of contract resulting in physical injury;

2. Defendants Hidalgo, Gonzalez, Baker, Wainwright, Collier, Davis, hirsch, Linthicum, Murray,

Stoker, Sizemore, and "John Doe" D.D.S.; for deliberate indifference to serious medical/dental needs; through delay and denial of treatment; resulting in physical and emotional injury being sustained by plaintiff.

3. Defendants Wainwright, Collier, Davis, Herrera, Tilley, West, Buchanan, Shannon, Gatson, and Bowman for deliberate indifference, denial of adequate shelter, retaliatory transfer, and failure to provide accommodations to plaintiff who is disabled and wheelchair-dependent.; which resulted in physical, emotional injury and humiliation, being sustained by plaintiff.

4. Defendants Poe, Ellis, Reeves, Ballard, Bowman, Mitchell, and Sizemore for deliberate indifference to serious medical needs; resulting in physical and emotional injury being sustained by plaintiff.

E. Award Punative damages in the following amounts:

1. $50,000 each against Defendants Baker, Hidalgo, Gonzalez Davis, Hirsch, Stoker, Sizemore and "John Doe" D.D.S. for delay and denial of dental treatment resulting in physical and emotional injury, as described in the foregoing complaint.

2. $50,000 each against Defendants Baker, Hidalgo, Gonzalez, Davis, Hirsch for breach of contract and/or interferrence with contractural obligations; resulting in physical and emotional injury being sustained by plaintiff.

3. $50,000 each against Wainwright, Collier, Davis, Herrera, Tilley, West and Bowman for denial of adequate shelter and failure to make adequate accommodations for the disabled and for retaliation.

4. $10,000 each against defendants Shannon, Gatson, Johnson, Tilley, Poe, Stanhope, and Mitchell for retaliation against plaintiff for exercise of constitutionally procted speech.

5. $20,000 each agianst defendants Shannon, Gatson, and Buchanan for denying plaintiff access to the restroom, resulting in his urinating on himslef and having to remain in urine soaked clothing for hours.

6. $20,000 each against defendants Poe, Teaff, and Mitchell for denial of due process in a disciplinary proceeding.

7. $5,000 each against defendants Reeves, Poe, Ellis, and Ballard for denial of access to medical treatment for serious medical need, resulting in physical and emotional injury being sustained by plaintiff.

F. Grant such other relief as it may appear that the plaintiff is entitled.

46.

C. Has any court ever warned or notified you that sanctions could be imposed?        _____ YES  xx  NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

    1. Court that issued warning (if federal, give the district and division): _____

    2. Case number: _____

    3. Approximate date warning was issued: _____


Executed on: <u>January 14, 2020</u>
             DATE

                                                Steven Kurt Baughman #2180609

                                              (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

    1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.

    2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

    3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.

    4. I understand I am prohibited from brining an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.

    5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.


Signed this _____<u>14</u>_____ day of ____<u>January</u>____, 20 <u>20</u> .
                (Day)              (month)          (year)

                                                Steven Kurt Baughman #2180609

                                              (Signature of Plaintiff)


**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Rev. 05/15

Steven Kurt Baughman #2180609
Powledge Unit, 15-07
1400 FM 3452
Palestine, TX 75803

January 14, 2020

Clerk
United States District Court
Southern District of Texas- Houston Division
P.O. Box 61010
Houston, TX 77208

United States Courts
Southern District of Texas
F I L E D

JAN 17 2020

David J. Bradley, Clerk of Court

      Re: New Filing- Steven Kurt Baughman V. Bryan Collier, et.al.


Dear Clerk:

Please find enclosed for filing Plaintiff's Original Petition/Complaint and Motion to Proceed In Forma Pauperis.

Please have the case filed and return a copy of this cover letter to plaintiff with the case number in the S.A.S.E..

Thank you for your time and assistance.


Respectfully;

Steven Kurt Baughman #2180609

Steven Kurt Baughman #2180609
Powledge Unit, 15-07
1400 FM 3452
Palestine, TX 75803

United States Courts
Southern District of Texas
F I L E D

JAN 17 2020

David J. Bradley, Clerk of Court

NORTH TEXAS PBDC
DALLAS TX 756
WED 15 JAN 2020

FOREVER / USA   FOREVER / USA   FOREVER / USA
FOREVER / USA   FOREVER / USA

LEGAL MAIL

Clerk
United States District Court
Southern District of Texas
P.O. Box 61010
Houston, TX 77208